PEOPLE'S BUILDING, LOAN AND SAVING ASSOCIATION v.
FRED DAILEY ET AL.

Delivered October 23, 1897.

#### 1.  Appeal—Objection Too Late—Permit to Do Business in State.

Objection that plaintiff, a foreign corporation, was not entitled to recover, because of a failure to prove an allegation in its petition that it had obtained a permit to do business within the State, can not be first raised on appeal.

#### 2.  Homestead—Mortgage—Simulated Transaction.

Where the owner of a homestead, with the knowledge of the mortgagee's agent, conveys it to a third person for the sole purpose of avoiding the homestead laws, a mortgage given thereon by such third person is void.

APPEAL from Tarrant.  Tried below before Hon. IRBY DUNKLIN.

*Pruit & Smith,* for appellant.

*Capps & Cantey* and *Ireland Hampton,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was instituted by appellant in the District Court of Tarrant County against appellee Frederick Dailey, on a loan obligation, asking judgment for the sum of $2500, the principal amount of the obligation, together with the monthly installments of interest thereon in the sum of $10.41, and of premium in the sum of $10.42 for each and every month since the 1st day of January, 1894.  Judgment was also asked foreclosing a deed of trust on lot 8, and 100 feet off the north end of lot 9, in block 1, Kennedy's addition to the city of Fort Worth, Tarrant County, Texas, given by said Dailey for the purpose of securing said loan obligation.

The deed of trust and loan obligation were both executed at the same time, and were given for money borrowed from appellant in pursuance of a written application by said Dailey to appellant, in which the property was represented as belonging to Dailey, and was offered as security for the loan.

There were several defendants, among whom was Kate Anderson. The questions involved in this apppeal arise upon her pleadings directed against the appellant.  She filed an answer in the nature of a cross-bill, in which she set up title in herself, both at the time the deed of trust was given, and by deed from her father, John Ratican, to herself, executed since the deed of trust.

In her claim under her deed from John Ratican, she alleges that at the time of the execution of the deed of trust the premises were the homestead of her father, John Ratican, and his family, and had been for a long time prior thereto; that on the 16th day of September, 1891, for the purpose of procuring a loan on said homestead property, John Ratican and wife, with the knowledge of appellant and through its procurement, executed a deed to said property to said Dailey, appellant knowing of the homestead character of the premises; that said deed was a mere

simulated transaction, to enable said Dailey to borrow money for and on account of said John Ratican, and that no consideration passed between Ratican and Dailey, all of which was known to appellant; that all sums paid by Dailey as interest, membership fee, and premiums were paid by him out of the funds of John Ratican coming into his hands, and the said payments were in truth and in fact made by said Ratican, which was to plaintiff well known.

Appellant replied to this pleading by a general denial, and by alleging that it had no notice of any claim to the premises in question by Kate Anderson or John Ratican, or any other person than Fred Dailey, at the time the loan was made and the deed of trust was executed, and that it made the loan in good faith, believing the property to belong to Dailey.

Special issues were submitted to the jury, and the judgment of the court was rendered upon the findings on these issues and some additional findings by the court made under agreement of the parties. The court rendered judgment in favor of appellant for $3252.80 against Dailey, but refused to foreclose the mortgage lien on the property, decreeing the same to Kate Anderson, holding the mortgage to be void as against said property. Appellant brings the case before this court for review.

Appellee Kate Anderson files a cross-assignment of error in her brief, which calls in question the right of appellant to prosecute this suit in the courts of this State, because while appellant alleged in its petition that it, being a foreign corporation, had filed a copy of its articles of association in the office of our Secretary of State, and obtained a permit from said Secretary to do business in this State, yet no evidence was produced to sustain this allegation, it being put in issue by the general denial of appellees filed with their answer.

This question is raised here for the first time by an assignment of error which complains that the court below should have instructed a verdict for the defendants, because of the total absence of evidence to sustain the allegation; and this view we would readily sustain, under the authority of Taber v. Building and Loan Association, 40 Southwestern Reporter, 954, if appellee had asked such instruction in the court below. But it is well settled in this State, in civil cases, that, in order to take advantage of the failure of the court to charge on any particular phase of the case, the party desiring such a charge must ask it of the court below; otherwise an assignment complaining of the omission will not be noticed on appeal.

Special issues were submitted to the jury, and we adopt their findings thereon, as we find the evidence sufficient to support them. Under the agreement of counsel, and at the written request of appellant, the court also filed conclusions of fact on points not covered by the findings of the jury, and we adopt the conclusions of fact found by the court, as also being sustained by the evidence.

The special findings of the jury are as follows:

"We, the jury, find answers to the issues submitted to us in this charge as follows :

"Answer to Issue No. 1: We find land set out and described in plaintiff's petition in whole the homestead of John Ratican and wife at time of transfer to Dailey.

\*         \*         \*         \*         \*         \*         \*         \*         \*

"Answer to Issue No. 3: We find that deed from Ratican and wife to Dailey was made for the purpose of borrowing money on said Ratican's homestead.

"Answer to Issue No. 4: We find that there was an understanding between parties to the deed referred to that said Dailey should reconvey property mentioned to Ratican and wife at some future time.

"Answer to Issue No. 5: We find that A. J. Chambers was agent of plaintiff in contracting loan referred to in this issue.

"Answer to Issue No. 6: We find that A. J. Chambers did have knowledge of the fact that property referred to was the homestead of John Ratican and wife, and that the conveyance from Ratican and wife to Dailey was for other purposes than to convey a real title to said Dailey.

"Answer to Issue No. 7: We find that there was no collusion on the part of said Chambers and others for the purpose of promoting his or their several interests to the injury of plaintiff. We have no evidence to prove that said Chambers did or did not conceal from plaintiff the true facts as asked about in issue No. 7.

"Answer to Issue No. 8: We find that answers to questions (a) 35 and (b) 36, in application referred to, are untrue. [From application: A 35. Is the property rented? Ans. Yes. B 36. If so, how much per month? Ans. $35.]

"Answer to Issue No. 9: We find statement in Dailey's application referred to in this issue to be untrue. [From application: I do hereby state under oath that I am in peaceable possession of the premises described in the above application; that my title thereto has never been questioned.]

"Answer to Issue No 10: We find that A. J. Chambers did know that Dailey's statement referred to in issue 10 was untrue.

"Answer to Issue No. 11: We have no evidence establishing the fact that A. J. Chambers did or did not send application referred to in this issue to the home office in Geneva, New York."

The court's conclusions of fact are as follows:

"1. I find that Mattie J. Ratican intended to convey the fee simple absolute title to the premises in question by her deed to Fred Dailey, dated September 16, 1891, but I consider this issue determined by the jury in answer to special issue No. 3 in the court's charge.

"2. Fred Dailey represented in his affidavit to his written application for the loan introduced in evidence, substantially, that the property in question was his property.

"3. I find that Chambers wrote the answers to the printed questions

in the said application. In addition to making it out, he, Chambers, as notary public, took Dailey's affidavit as to the truthfulness of the matters stated in it.

"4. The answers to the questions in said application are in writing, and all written portions of the application are in Chambers' hand.

"5. I find that Chambers took the affidavit of the six appraisers on the back of the application, to the truthfulness of the statements in said certificates. The written portions of such reports are in Chambers' hand. There are two of such reports, and they contain a statement to the effect that the appraisers have each made a personal inspection of the premises described in said application, and had read over the statements made by the applicant and believed the same to be true. Other matters were also contained in said reports, but plaintiff's counsel waived any statement of them herein.

"6. The abstract in evidence contains an abstract of the deed from Ratican and wife to Dailey to the property in question, and shows the same to have been duly filed for record in this county. I find that Chambers delivered this abstract to Drew Pruit, in order that he might examine the same and certify as to the title as shown therein.

"7. Drew Pruit, attorney at law, was authorized by plaintiff to pass on the title as shown by said abstract.

"8. I find that John Ratican and wife used and occupied the property in question as their homestead until some time in the summer of 1892, and he, John Ratican, used and occupied it as his homestead up to the date of his deed to Kate Anderson, dated May 30, 1894, and that he has lived upon it ever since with Kate Anderson. John Ratican and his wife are not living together, and have not lived together at any time since the date of said deed; and from these facts I conclude that Mattie J. Ratican abandoned said property as a homestead in the summer of 1892, and that John Ratican did not abandon it prior to May 30, 1894.

"9. Chambers had no authority to pass on the title to the premises in question.

"10. Chambers knew that Drew Pruit was the local attorney for the plaintiff to pass on abstracts of title to property offered as security for loans.

"11. Drew Pruit passed on said abstract, and certified that it showed absolute title in Fred Dailey to the property in question. Pruit knew of no claim by Ratican to the premises at said time.

"12. As to whether or not Chambers intended that the said abstract, with Drew Pruit's opinion thereon, should be before the board of directors of plaintiff when acting on said application, there was no evidence pro or con, and I therefore make no finding on this issue. I find that said abstract and certificate were before said board at said time.

"13. Chambers knew at the time Dailey's application was made that it would be sent to the plaintiff at its home office, and would be considered by the plaintiff. I find that the board of directors of plaintiff did have said application before it when acting on said application.

"14. The matters stated in the application, the abstract, and Pruit's certificate, as to the title, were considered by the board in granting the loan.

"15. Chambers knew before the loan was granted that he would receive a commission of 2 per cent on all funds he would collect from Dailey on the stock taken by Dailey in plaintiff's company, which stock plaintiff (defendant) was compelled to take in order to get the loan, also a commission of 2 per cent on such monthly interest and premium payments as he might collect from Dailey.

"16. The plaintiff had no actual knowledge of Ratican having any claim upon the premises, or any interest in the loan, when it acted on said application, other than such notice as might be fastened upon it as a matter of law by reason of said Chambers' knowledge.

"17. I find that the plaintiff has a valid debt against Dailey for the amount of judgment rendered against him, as evidenced by the bond in evidence, and that the deed of trust sued on was executed by Dailey and wife, and includes the premises in question.

"18. I find that Fred Dailey actually obtained the sum of $2250 from plaintiff, and that there has been paid to plaintiff on said transaction, according to agreement of counsel, as follows:·

\*          \*          \*          \*          \*          \*          \*          \*          \*

"21. [From motion: Did the plaintiff's board of directors make the loan in question upon the belief that the title to the property in question was in Dailey?]  Yes."

We overrule all of appellant's assignments of error, and deem it necessary to notice in particular only the one insisting that, upon the findings of the jury upon the special issues and the conclusions of fact found by the court, judgment should have been rendered in favor of appellant foreclosing its mortgage on the property in question; because, it is insisted, if the findings that Chambers was the agent of appellant in making the loan, and that he knew of the simulated character of the transaction, are sustained by the evidence, it also appears that he acted in collusion with Dailey and Ratican in his own interest and in theirs, to cheat and defraud his principal, and hence the appellant would not be held to have notice of the real facts as known to the agent, when by the fraudulent conduct of Dailey and Ratican they had induced him to withhold or conceal them from his principal.

Our Supreme Court in Centennial Life Association v. Parham, 80 Texas, 526 (16 Southwestern Reporter, 316), said: "It is ordinarily true that a principal is affected with notice of such facts as come to the knowledge of the agent in the course of his business. When an agent, however, ceases to act for his principal in good faith, and through collusion with another, desiring through him to cheat and defraud the principal, practically enters into the service of that other for the purpose of promoting the interest of that person or the common interest of himself and that other in fraud of his principal, then the person who so avails himself of

the services of such agent can not claim that his act or his knowledge in reference to matters to which the fraudulent collusion relates are binding on the person intended to be defrauded. In such a case, the agent pro hac vice becomes the agent of the person he collusively serves."

The agency being established by appellees, it devolved upon appellant to prove the fraudulent collusion of appellees with Chambers, before it could escape the consequences of its agent's knowledge of the character of this transaction. The jury were properly instructed on the point, and found in their verdict that there was no collusion between Chambers and others, and that there was no evidence to prove that he concealed or did not conceal his knowledge from the principal.

The evidence shows that an attorney in whose office Chambers kept his desk and carried on his agency suggested to Dailey in Chambers' presence that while Ratican could not legally mortgage his homestead to secure a loan, yet he might convey it to Dailey, and it not being Dailey's homestead he could mortgage it, and afterwards when the mortgage was paid off it could be reconveyed to Ratican; and it seems that Ratican, Dailey, and Chambers regarded that such a transaction would be valid and perfectly proper, and hence they did not intend to defraud anybody. It was simply a mistake of the agent, as well as of Dailey and Ratican, and a misunderstanding of the law of this State; and probably a mistake of appellant also, for it appeared in one of the letters of their general manager to Chambers, while this Dailey loan was being negotiated, that the question of the validity of a mortgage on a homestead in Texas had been under consideration. The manager wrote that their attorneys at Dallas had advised them not to make any more loans on homesteads in Texas, but that they would go on and close up the loans then on hand.

The jury having found upon sufficient evidence that it was the understanding and intention of the parties that the property should be reconveyed to Ratican, and, in effect, that Chambers knew of this understanding and intention, and that the conveyance was only a simulated transaction for the purpose of obtaining the loan in avoidance and evasion of the homestead laws of the State, we are constrained to hold that the mortgage was void. The agent employed by the appellant to solicit and secure such loan having obtained full notice and knowledge of the simulated character of the transaction during the negotiation of the loan, the principal must also be held to have had notice of all that the agent knew, and must be held to have known that, under our Constitution and laws, a mortgage on a homestead is void and can never become valid.

The appellant, by reason of its agent's knowledge, is not in a position to urge an estoppel.

We feel compelled to affirm the judgment in this case, and order it accordingly.

*Affirmed.*