### Mrs. M. A. Morrill v. J. R. Bosley et al.

#### Decided June 3, 1905.

**1.—Practice on Appeal—Conflicting Evidence.**

In a case of directly conflicting evidence the verdict of the jury will not be disturbed on appeal.

**2.—Homestead—Simulated Conveyance—Notice Through Agent.**

Where the owners of a homestead made a simulated conveyance thereof for the purpose of obtaining a loan, and this was known to the agent of the party who bought the vendor's lien note secured by such conveyance, and the agent, without intention to deceive or defraud his principal, but while acting in her behalf, elected to invest her money in the purchase of the lien note, his knowledge of the simulated transaction was imputable to his principal, and she was bound thereby.

**3.—Same—Fraud and Collusion of Agent.**

Notice to the agent would not be notice to the principal if there was collusion between the agent and the owners of the homestead property for the pur-

pose of defrauding the principal. Evidence held not to show such collusion, although the agent knew the property was homestead.

**4.—Verdict and Judgment—Harmless Error.**

    Where, in an action involving the title to land as between plaintiff and defendant, an adjustment of city taxes was also sought, and the city, being made a party, sought to foreclose an admitted lien for taxes on the land, and there was merely a general verdict against plaintiff, but the judgment also foreclosed the tax lien in favor of the city, the error in this respect, if any, afforded plaintiff no ground for reversing the judgment.

    Error from the District Court of Dallas. Tried below before Hon. Thos. F. Nash.

    *Wendell Spence* and *Joseph M. Dickson,* for appellant.—1. Although there may be sufficient evidence in a case to require the trial judge to submit it to the jury, yet, if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may, and should, grant a new trial upon proper motion. The prerogatives of the jury shall not be perverted to the accomplishment of wrong. Choate v. San Antonio & A. P. Ry. Co., 90 Texas, 82, 88; Houston & T. C. Ry. Co. v. Loeffler, 59 S. W. Rep., 558; Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Texas, 71, 75; Chandler v. Meekling, 22 Texas, 37, 41; Houston, etc., Ry. Co. v. Schmidt, 59 Texas, 282; Joske v. Irvine, 91 Texas, 574; Missouri, etc., Ry. Co. v. Somers, 78 Texas, 439, 441; Willis v. Lewis, 28 Texas, 185, 192; Dimmitt v. Robbins, 74 Texas, 441.

    2. Where a person dealing with another, through his agent, conspires with such agent to defraud the principal, the principal is not bound by the agent's knowledge, whether his powers are general or special. Scripture v. Scottish, etc., Mtge. Co., 20 Texas Civ. App., 158, 49 S. W. Rep., 644; Bunton v. Palm (Sup. Ct.), 9 S. W. Rep., 182; Campbell v. Crowley, 56 S. W. Rep., 373; Cooper v. Ford, 69 S. W. Rep., 487; Investment Co. v. Ganzer, 63 Fed. Rep., 647; Association v. Parham, 80 Texas, 518.

    3. The verdict of the jury must find all the issues made by the pleadings. Moore v. Moore, 67 Texas, 293, 297; Kerr v. Hutchins, 46 Texas, 384; Galveston, H. & S. A. Ry. Co. v. Betts, 55 S. W. Rep., 514; Ablowich v. Greenville Nat. Bank, 95 Texas, 429.

    *Seay, Richardson & Seay,* for appellees.—1. It is not sufficient, in order to set aside the verdict by the Appellate Court, that there is evidence in the record upon which the jury would have been justified in finding a contrary verdict, and the presumption in favor of the verdict is much stronger in the Appellate Court after the trial judge, having heard the witnesses, and having them before him, has approved the verdict. Willis v. Whitsett, 67 Texas, 678; Battee v. Beck, 70 Texas, 755; Miller v. Perkins, 1 S. W. Rep., 468; Wright v. Salmons, 46 S. W. Rep., 58; Harrell v. Broome, 50 S. W. Rep., 1077; Jacobs v. Hawkins, 63 Texas, 4; Edington v. Kizer, 4 Texas, 93; Anderson v. Wharton Co., 65 S. W. Rep., 643; Hath v. Herman, 24 S. W. Rep., 664; Cooper & Co. v. Sawyer, 73 S. W. Rep., 992; Mathis v. Obertheir, 50 Texas, 329; William v. Willis, 84 Texas, 400; Wright v. Campbell, 82 Texas, 389;

Chicago, R. I. & T. Ry. Co. v. Ames, 74 S. W. Rep., 77; St. Louis, etc., Ry. Co. v. Campbell, 69 S. W. Rep., 453.

2. Notice to the agent was notice to the principal, plaintiff herein, no collusion between the agent and the defendants being shown. Taylor v. Flynt, 8 Texas Ct. Rep., 938; Taylor v. Flynt, 67 S. W. Rep., 347; Taylor v. Flynt, 59 S. W. Rep., 1126; Building & Loan Assn. v. Dailey, 42 S. W. Rep., 364; Stephenson v. Yeargan, 42 S. W. Rep., 626; Harbes v. Levy, 8 Texas Ct. Rep., 443; Brown v. Wilson, 29 S. W. Rep., 532; Texas Loan Co. v. Hunter, 35 S. W. Rep., 399.

TALBOT, ASSOCIATE JUSTICE.—This suit, as originally instituted, was substantially an action by plaintiff in error against the city of Dallas and defendants in error, J. R. Bosley and his wife, Ida C. Bosley, to prorate taxes due said city on different parcels of land, alleged to be the property of plaintiff in error and defendants in error respectively, that had been assessed together for taxation, and to recover from the said J. R. Bosley his proportion of certain taxes which plaintiff in error had been compelled to pay on said property, in order to be allowed to pay the taxes on the property alleged to be her own, and which had been assessed with Bosley's property. By the allegations of defendants in error it became also a suit to recover or quiet title to the property described in the petition.

The original petition alleged that on January 1, 1890, J. R. Bosley and wife were the owners of a lot fronting 100 feet on the southeast side of Live Oak Street by 160 feet deep on Floride Street, in Dallas, Texas; that on February 20, 1892, J. R. Bosley and wife conveyed, by general warranty deed, to W. J. Betterton, a lot 50 feet on Live Oak Street by 110 feet deep, said lot being a part of the 100 feet by 160 feet, and being 50 feet northeast of Floride Street (said lot so sold being hereinafter, for brevity, called the Morrill lot); that the said Bosleys have ever since continued to be the owners of all of said 100 by 160 feet lot except said Morrill lot. That in the deed of said Morrill lot from Bosley and wife the consideration was recited to be $1,550 paid, and one note for $1,200 and one for $500, to secure which the vendor's lien was expressly retained, the deed providing that the $1,200 note was a first lien and the $500 note was a second lien upon said Morrill lot; that by agreement of all parties the $1,200 note was made payable to plaintiff, who paid the full amount thereof to the said Bosley and wife; that on February 20, 1892, as part of the same transaction, W. J. Betterton executed to Joseph M. Dickson, as trustee, a deed of trust on said Morrill lot to secure said $1,200 note, authorizing a sale of said lot; that default was made in the payment of said $1,200 note, and that on June 7, 1898, in compliance with the terms of the trust deed, which were alleged, the said trustee sold the Morrill lot, and the same was bought in by plaintiff, who received a deed therefor, and had ever since been the owner and in the possession thereof. That said entire 100 by 160 feet had been assessed together by the city of Dallas for taxation for the years 1890 to 1898, inclusive; that the city of Dallas had refused to prorate the taxes on said property for any of said period, and the other defendants had refused to pay any part of the taxes or make any agreement about them; that plaintiff had paid all the

taxes for 1898; that the Morrill lot, during said period, was worth one-third the entire lot. The prayer was that the taxes for 1890, 1891, 1892, be adjudged to be primarily a lien on that part of the 100 by 160 feet owned by the Bosleys, and that the taxes for 1893-1897 should be prorated and adjudged primarily to be liens, one-third on the Morrill lot and two-thirds on the remainder of the lot, and that plaintiff should have judgment against J. R. Bosley for two-thirds of the taxes for 1898, with foreclosure of lien.

The city of Dallas pleaded that the taxes for 1890 to 1897, inclusive, had been legally assessed and levied on the property, and prayed for judgment with foreclosure of tax lien.

The defendants J. R. Bosley and wife pleaded: (1) That on January 1, 1890, the property described in plaintiff's petition was the separate estate of Ida C. Bosley, and was the homestead of defendants in error. (2) That the instrument executed by them to W. J. Betterton, described in the petition, and purporting to be a deed to the Morrill lot, was merely a pretended conveyance executed by them solely for the purpose of enabling them to procure a loan of $1,200 on said lot; that said deed was not acknowledged privily and apart from her husband by Mrs. Bosley; that W. J. Betterton never paid the cash consideration recited in the deed, and never had any interest in the property; that the whole transaction was a scheme to fix a lien on their homestead for the $1,200 note. (3) That they believed, at the time of the execution of their deed to W. J. Betterton, that they were borrowing money from Joseph M. Dickson, and that the said Dickson not only had notice of the fact that said transaction was entered into for the purpose of borrowing money on a homestead of defendants in error, but suggested that the papers be drawn as they were, and assured defendants in error that they could in this way give a valid lien for borrowed money on their homestead. (4) That plaintiff had full and complete knowledge of said facts. That, even if the lien was valid, it was agreed between the plaintiff and the Bosleys that if said land was ever sold under said deed of trust it should bring at least a sum sufficiently large to pay said lien and the $500 note held by J. R. Bosley. (5) that the $1,200 note had been paid; that on November 2, 1894, it was agreed by J. R. Bosley and plaintiff that Bosley had paid $430; that it was also then agreed that from that time plaintiff should collect the rents on said property and apply them on the debt, and that the rents were $18 per month; the plaintiff was notified to produce an account showing the amounts received. (6) That Ida C. Bosley was not examined privily and apart from her husband when she acknowledged the deed to W. J. Betterton, but that at the time she and her husband were together in the same room with the notary. (7) That the plaintiff had never had possession of the Morrill lot. The pleading closed with a prayer for the title and possession of the property.

The plaintiff filed her first supplemental petition on January 8, 1904. This consisted of a demurrer to the pleadings of the Bosleys, a general denial, a plea of not guilty, and pleas of the two and four years statutes of limitations, and a special plea of the five years statute of limitations. Plaintiff then specially pleaded the execution of the deed, note and trust deed mentioned in her original petition, and the

purchase by her of the Morrill lot at trustee's sale under the trust deed securing the $1,200 note, on June 7, 1898; that her deed to the lot was filed for record on June 10, 1898, and duly recorded in volume 224, page 365, Records of Deeds, etc., of Dallas County, Texas; that on June 7, 1898, she took possession of the property by tenant, and thereafter held peaceable and adverse possession thereof to August 20, 1903, paying all taxes thereon, when defendants in error took forcible possession of said property. That the plaintiff bought said note for $1,200, relying upon the truth of the recitals therein, and in the said deed and trust deed, and without any knowledge whatever as to the alleged facts which the defendants Bosley allege made the lien of said note invalid; that she believed said property had been actually sold by the Bosleys to W. J. Betterton, as recited in said deed and note, and that if she had known of the facts which defendants claim prevented said note from being a valid lien on said property, she would not have purchased said note; that in 1900, 1901 and 1902, plaintiff spent on said Morrill lot $250 repairing the house and filling up said lot, all of which was done with the knowledge of the said Bosleys and without their notifying plaintiff that they had any claim or interest in said lot.

Plaintiff further averred that, in buying said $1,200 note, she was represented by J. M. Dickson, and denied that the said Dickson, when said note was bought, had any knowledge whatever of any matters or facts which are now claimed by the said Bosleys to have made the lien securing said $1,200 note invalid; but she says that if the said Dickson did have any knowledge of any of said alleged facts affecting the validity of said lien, that then plaintiff is not bound by or affected by such knowledge, because at that time plaintiff had given the said Dickson positive and absolute instructions not to lend any money or buy any notes or other obligations secured upon property which was a homestead of a man and wife in Texas, unless the same was amply secured by vendor's lien thereon; that if the said Dickson had any knowledge or notice of any invalidity in said deed, note or trust deed, it was not communicated to plaintiff, and if the said Dickson had such knowledge or notice, then in buying said $1,200 note he was acting thereon for the benefit of the said Bosleys and himself in opposition to and in conflict with the interests of plaintiff. Plaintiff then prayed for judgment against the Bosleys for rent from August 20, 1903, and pleaded that the facts as alleged estopped defendants Bosleys from denying her title.

The case was tried by a jury, to whom the case was submitted on a general charge. The jury returned a general verdict: "We, the jury, find for the defendants, J. R. Bosley and Ida C. Bosley." Upon this verdict the court entered a general judgment that the plaintiff take nothing, and also entered judgment in favor of the city of Dallas adjudging the amount of the taxes and foreclosing a lien on the entire lot in its favor. Plaintiff's motion for a new trial was overruled, and she brings the cause to this court for revision by writ of error.

We deduce, from the evidence found in the record, the following conclusions of fact, which we think the verdict of the jury embraces, and which are justified by such evidence. Joseph M. Dickson acted as the agent of plaintiff in error, Mrs. Morrill, in making the loan or purchase of the $1,200 note, and was authorized by her to do so. At

the time such loan or purchase was effected, the property in controversy constituted the homestead of defendants in error, Bosley and wife, and Dickson knew this fact. The conveyance from Bosley and wife to W. J. Betterton of said property was without consideration, and made solely for the purpose of securing the loan upon said homestead, and was not intended to convey title out of Bosley and wife, all of which was known to the agent, Dickson, at the time the loan in question was made. The action of W. J. Betterton in executing the said $1,200 note and deed of trust upon the property in controversy to Joseph M. Dickson, as trustee, to secure the payment of said note, was taken solely for the benefit of the Bosleys, and this was known to Dickson. Plaintiff in error had no actual or personal knowledge that the property in controversy was the homestead of Bosley and wife, and when her agent bought the $1,200 note she had never heard, and did not know, anything about the deed to Betterton not being an actual bona fide conveyance. There was nothing in either the deed from Bosley and wife to Betterton, the $1,200 note, or the deed of trust executed and delivered to Dickson as trustee, to put a person on suspicion that the facts were not as recited. The $1,200 note was not paid in full, and, after advertising the same according to law, the said Joseph M. Dickson, as trustee, sold the property in controversy under the terms of the said deed of trust on the first Tuesday in June, 1898, and the same was bought in by plaintiff in error for $1,000, which amount was credited on said note, and she received a deed in due form from said Dickson, trustee, for said property. This trustee's deed was dated June 7, 1898, and recorded June 10, 1898, in the Records of Deeds of Dallas County, Texas, and plaintiff in error paid the taxes on the property in controversy—city, county and State—for the years 1898 to 1903, inclusive. After the conveyance from Bosley and wife to Betterton, and the purchase of the $1,200 note by Mrs. Morrill, Bosley and wife in person, and through their tenants, remained in possession of the property in controversy, and if Mrs. Morrill, through her tenants or otherwise, had possession of said property for any length of time, such time was less than five years. In making the loan of Mrs. Morrill's money, or in purchasing the $1,200 note and taking a lien on the homestead of defendants in error, the said Joseph M. Dickson had no intention to deceive or defraud his principal; nor was there any collusion between the said Dickson and J. R. Bosley or Bosley and wife to defraud Mrs. Morrill in the transaction in question. On the contrary, the said Dickson acted in good faith throughout the transaction in behalf of Mrs. Morrill, intending to secure the loan made by a valid lien on the property in controversy. After Mrs. Morrill purchased the property at the trustee's sale, and before this suit was instituted, she made improvements upon the same of the value of about $250. These improvements were made with the knowledge of the Bosleys and without any objection or express assertion on their part to plaintiff in error or to her agent of their claim to the property.

The propositions contained in, and urged under, appellant's first, second, third and fourth assignments of error are, in substance, that the verdict of the jury and judgment rendered thereon are unsupported by the evidence, in that (1) the overwhelming weight of the evidence

showed that neither plaintiff in error nor Joseph M. Dickson, her agent in the transaction in question, had any knowledge of any invalidity affecting the deed of conveyance from J. R. Bosley and wife to W. J. Betterton, or affecting the note for $1,200 executed by Betterton, at the time plaintiff in error bought said note; (2) that when an agent of an investor, in violation of his principal's instructions, purchases a simulated vendor's lien note upon the homestead of a third party in collusion with the latter, and conceals his knowledge from his principal, the principal will not be bound by the agent's secret knowledge.

The undisputed evidence shows that the property in controversy was the homestead of defendants in error when the deed through which plaintiff in error claims was executed by them to W. J. Betterton, and such fact was well known to Mr. Dickson, plaintiff in error's agent. That such conveyance was without consideration, simulated and made merely for the purpose of obtaining the loan, is amply supported by the testimony. The evidence does not show that the plaintiff in error had any personal knowledge of the simulated or colorable character of any of the transactions resulting in the loan or purchase by her of the $1,200 note, but that Mr. Dickson, who negotiated the loan and purchase of the note for her, was fully authorized, subject to her approval, to make loans and investments for her, is undisputed. As to whether or not Mr. Dickson knew that the conveyance from J. R. Bosley and wife to W. J. Betterton was merely colorable, and not intended to convey the title of the property herein described, is conflicting. Dickson swears that he did not know that such was the character of said deed, but believed the same was a genuine conveyance, as shown upon its face. On the other hand, J. R. Bosley testified to a state of facts and circumstances showing that said deed was made by himself and wife solely for the purpose of securing the loan, without any intention on their part or the part of W. J. Betterton that the title to the property should thereby pass, and that the said Dickson was aware of these facts. Here, then, we have the testimony of two witnesses in direct conflict upon the issue involved. The one testified to a state of facts which would authorize a verdict in favor of the plaintiff in error, and the other to a state of facts which would justify and support a verdict for the defendants in error. In such case it was the peculiar province of the jury to weigh the testimony and decide the question. This they did, favorable to defendants in error, and, under the settled rule of practice in this State, we would not be warranted in disturbing their finding.

The next question presented is, does the evidence so conclusively establish that Joseph M. Dickson colluded with defendant in error, J. R. Bosley, to defraud his principal, that his knowledge of the homestead character of the property in controversy, and that the conveyance of the same to Betterton by defendants in error was merely colorable, can not be imputed to her. Plaintiff in error contends that the verdict of the jury must necessarily have been based upon the evidence adduced by defendants in error, and that such evidence requires this question to be answered in the affirmative. We do not concur in this contention. Proof that Dickson knew that defendants in error had conveyed their homestead to W. J. Betterton, without consideration and with no in-

tent to convey the title, with a view of procuring a loan that they could not otherwise procure, was not sufficient to relieve Mrs. Morrill of the legal effect of such knowledge on Dickson's part. To have had that effect the evidence must further have shown collusion between the said Dickson and J. R. Bosley for the purpose of deceiving and defrauding her. If Dickson intended to defraud his principal in the transaction, then he ceased to represent her, and the law will not impute notice to her of the facts known to him. But, although Dickson knew that the conveyance to W. J. Betterton was simulated, yet if, without any intention to deceive or defraud Mrs. Morrill, and acting in her behalf, he elected to make the loan in question, then his knowledge will be imputed to his principal, Mrs. Morrill, and she can not escape the consequences of his acts. (Taylor v. Flynt, 33 Texas Civ. App., 664, 8 Texas Ct. Rep., 938; Cooper v. Ford, 29 Texas Civ. App., 253, 69 S. W. Rep., 487; Campbell v. Crowley, 56 S. W. Rep., 488; Building & Loan Assn. v. Daily, 17 Texas Civ. App., 38, 42 S. W. Rep., 364; Association v. Purham, 80 Texas, 518.)

Joseph M. Dickson testified that in February, 1892, he had had large experience in the matter of the homestead laws of Texas, and knew such laws; that shortly before he bought the $1,200 Betterton note, J. R. Bosley told him that he, Bosley, had sold a piece of property on Live Oak Street to W. J. Betterton; that he would get vendor's lien notes on the property for $1,700, and wanted to know whether he, Dickson, could cash them; that he told Bosley if the title was good and the property satisfactory his aunt, Mrs. Morrill, would buy the notes; that he inquired about the value of the property and took the matter up with Mrs. Morrill; that afterwards Bosley called again and he, Dickson, told him that Mrs. Morrill was willing to cash Betterton's note on the property for $1,200; that Bosley expressed himself satisfied and requested him, Dickson, to draw up the papers, which he did. That after the papers were drawn up he gave them to Bosley, who brought them back to him signed up, and that he, Dickson, did not speak to Betterton about the matter; that he never suggested to Bosley anything about deeding the property to Betterton, nor suggested any scheme to him about putting a loan on his homestead, and never fixed any such scheme in his life; that when he cashed the $1,200 note Bosley told him that he had sold the property to Betterton, and he believed Bosley was acting in good faith and believed the deed and note to be absolutely what they appeared to be; that when he went out to see the property, before the loan, Bosley told him it was his, Bosley's, homestead, and he, Dickson, knew it was such at the time of the loan and that Bosley and his family were living on it.

J. R. Bosley testified that he met Mr. Dickson on the street and told him he wanted to borrow $1,200 on his homestead on Live Oak Street; that Dickson went out and looked at the property and said he would let him, Bosley, have as much as $1,200. That Dickson suggested to him that in order to get the loan that he, Bosley, would have to make a deed to a third party, and suggested Mr. Betterton; that the $1,550 recited in the Betterton deed as paid in cash was put in the deed in that way at Mr. Dickson's suggestion; that he, Bosley, did not then know that a man and wife could not give a straight mortgage on their

homestead as security for a loan. That it was not true that he told Dickson that he had sold or contracted to sell his homestead to W. J. Betterton, etc. Now, while the above and other testimony in the record is, in our opinion, sufficient to support the jury's finding that the property in controversy was the homestead of Bosley and wife and so known to Dickson, and that Dickson knew that the conveyance to Betterton was without consideration, and merely colorable and intended solely for the purpose of securing a loan by defendants in error on their homestead, yet it does not necessarily imply that Mr. Dickson, in making the loan, had colluded with J. R. Bosley to defraud Mrs. Morrill. Whether or not Dickson had conspired with J. R. Bosley in making the loan, with the intent to deceive and defraud Mrs. Morrill, was an issuable fact under the evidence for the determination of the jury. It was so regarded by the trial court and by appropriate instructions submitted to the jury for their decision. By their verdict the jury have said that no such conspiracy was entered into and no such intention on the part of Dickson existed, and these conclusions are sustained by the evidence.

The court did not err in refusing to set aside the verdict and grant plaintiff in error a new trial on the ground that she had shown title to the property in controversy by limitation. Plaintiff in error never occupied the property herself, and whether the tenants in possession were her tenants or the tenants of Bosley and wife was a disputed issue. That issue was fairly submitted to the jury, and their finding in favor of defendants in error upon it, in view of the evidence contained in the record, is conclusive upon this court. Nor did the court err in refusing to submit the question of estoppel invoked by plaintiff in error. The evidence, in our opinion, was not sufficient to authorize the submission of that question, and the court correctly declined to give the special instruction asked relating thereto.

Error is assigned to the verdict of the jury in that no finding was made and stated therein as to the amount of the taxes due the city of Dallas and lien claimed upon the property in controversy, to secure payment of the same. As has been seen, the verdict only disposed of the case as to the issues involved between plaintiff in error and J. R. Bosley and wife. Judgment, however, was rendered by the court in favor of the city of Dallas for the taxes claimed, with a foreclosure of its lien. That the verdict of the jury must find all the issues made by the pleadings and evidence, and in case of a suit for debt and to foreclose a lien, the court has no power to enter judgment or foreclosure of such lien unless the jury, by their verdict, has made a finding to that effect, are correct propositions of law. (Ablowich v. Greenville Nat. Bank, 95 Texas, 429.) In this case, however, there was never any controversy as to the right of the city of Dallas to recover its taxes and foreclose its lien on the property therefor. This right of the city was pleaded by all parties, and the judgment of the court recites, in effect, that it was admitted on the trial. If, however, it be conceded that it was a fact to be determined and stated in the verdict of the jury, still we are of the opinion the case should not be reversed. The property was adjudged to be the property of Bosley and wife and the lien foreclosed on it as such. No judgment against plaintiff in error for taxes

was rendered, and as the property upon which the lien was foreclosed was recovered by defendants in error, Mrs. Morrill has no ground of complaint on account of the error pointed out. Such error was harmless so far as she is concerned, and defendants in error have not complained of it in this court.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.