### S. M. COOPER ET AL. V. T. W. FORD, RECEIVER, ET AL.

Decided March 15, 1902.

**1.—Notes—Maturity—Limitations—Option to Be Exercised.**

Where it is provided in each of two notes that default in the payment of the note at maturity shall, at the option of the holder, mature both notes, such default as to the first note does not of itself, and in the absence of the exercise of such option, mature the second note so as to start limitations to running against it.

**2.—Homestead—Simulated Sale—Possession—Notice—Charge.**

The owners of a homestead executed a simulated deed of it to a sister living with them for the purpose of borrowing money on the notes given by her for the pretended purchase price, and in an action to foreclose the lien thus created, against which the homestead right was asserted, the court charged that the fact that the purchaser of the notes knew that the property was homestead and that the grantors continued to reside thereon with the grantee was not sufficient to put such purchaser on inquiry as to whether the deed was simulated. Held, that this was a correct statement of the legal effect of the possession, and not erroneous as being on the weight of evidence.

**3.—Principal and Agent—Notice to Principal.**

The principal is chargeable only with such knowledge as came to the agent in the course of the transaction, and not by knowledge which the agent acquired in ordinary social intercourse before the transaction was contemplated.

**4.—Same—Conspiracy—Evidence Raising Issue.**

Evidence showing that an agent, knowing that the property was homestead and its sale simulated, purchased for his principal the notes given for the price of the property, was sufficient to raise the issue of a conspiracy between the seller and the agent.

**5.—Same—Fraud of Agent.**

Where an agent, either general or special, conspires with the opposite party to defraud the principal, notice will not be imputed to the latter because of the agent's knowledge.

**6.—Homestead—Fraud Estopping Wife.**

A wife who joins with her husband in a simulated deed of the homestead to enable him to raise money on the notes given for the pretended price is estopped to deny the validity of the lien so created as against an innocent purchaser of the notes.

**7.—Same—Evidence.**

In an action of foreclosure brought on vendor's lien notes given on a sale of homestead property, an affidavit made by the grantor husband at the time of the sale, that the deed was made in good faith, was admissible against the wife to show that plaintiff was an innocent purchaser of the notes.

**8.—Evidence—Deceased Witness—Stenographer's Notes.**

The evidence given on a former trial of the case by a witness since deceased may be reproduced by reading a transcript of the notes of his testimony, veri-

fied by the stenographer, to the effect that he took the notes, that they were correct, and that the transcript is a correct copy of their substance, although he does not then remember the evidence independent of the notes.

Appeal from Dallas.   Tried below before Hon. Richard Morgan.

*McCormick & Spence,* for appellants.

*A. E. Firmin* and *Watts & Aldredge,* for appellees.

TEMPLETON, Associate Justice.—On December 13, 1889, S. L. May and wife deeded the lot which is in controversy in this suit to May's widowed sister, Mrs. S. M. Cooper.   May and wife, with their children, and Mrs. Cooper, with her children, resided on the lot, both families occupying the same residence.   The lot was the homestead of May and wife.   The deed to Mrs. Cooper was in the usual form, contained general covenants of warranty, and was duly acknowledged.   It recited a consideration of $4500 cash and two notes of $2000 each, bearing interest from date at the rate of 9 per cent per annum, and due in two and three years respectively.   May at once sold the notes to the J. B. Watkins Land and Mortgage Company, which was represented in the transaction by its agent, M. J. Dart.   On November 23, 1896, T. W. Ford, receiver of the Watkins company, brought suit on said notes against Mrs. Cooper as maker and May as indorser.   He sought a foreclosure of the vendor's lien on said lot.   Mrs. May intervened.   The defendants and intervener set up the fact that the lot was the homestead of May and wife, and alleged that the deed to Mrs. Cooper was made, not with the intention of conveying title, but for the purpose of creating an apparent vendor's lien, in order to enable May to borrow money on the security of said notes.   It was charged that the Watkins Company, through its said agent, knew that the lot was homestead and the conveyance simulated.   The plaintiff denied notice, and pleaded that if Dart had notice the same was not received in the course of his agency, and further, that if Dart had notice he concealed the facts from his principal and colluded with appellants to defraud it.

The defendants interposed the statute of limitations in bar of a recovery on the notes.   A jury was impaneled to try the case, and was instructed by the court that the first note was barred, but that the second note was not. Appellants complain of the charge in respect to the second note.   The contention is that a right of action accrued on that note when default was made on the other note.   The contention is based on a stipulation which is contained in both notes, and which reads thus:  "It is understood and agreed that failure to pay this note, or any installment of interest thereon, when due, shall, at the option of the holder, mature this note and all other notes this day given by me to said S. L. May in payment for said property; and the holder can proceed to collect the same in the same manner as if the full time had ex-

pired." We had occasion to consider a similar question in the case of Harrington v. Claflin, recently decided and not yet reported. That case is decisive of the question under consideration. The stipulation above set out was not self-operative and did not have the effect to change the time of maturity as stipulated in the note, in the absence of an election on the part of the holder of the note to take advantage of the option. The charge of the court was correct.

On the issues joined concerning the lien the jury returned a verdict for the plaintiff, and this appeal is prosecuted from a judgment entered on such verdict. The evidence showed conclusively that the lot was the homestead of May and wife; that the object of the conveyance to Mrs. Cooper was to create an apparent lien on the homestead so that May could borrow money thereon; that the Watkins Company bought the notes before maturity and paid therefor. The deed and notes were sufficient on their face to create a valid lien on the lot. It follows that the Watkins Company is entitled to a foreclosure, if it did not have notice of the fictitious character of the conveyance. On this issue, it was shown that the company did not have such notice unless its agent, Dart, knew the facts constituting notice and his knowledge should be imputed to his principal. If Dart knew the facts he did not communicate the same to the company. On the issue of notice three questions are presented: (1) Whether Dart knew that the conveyance was simulated. (2) Whether, if he knew that fact, he acquired such knowledge in the course of his agency; and (3) whether, if he knew the fact, he colluded with May to defraud the company.

The evidence was sufficient to support a finding by the jury that Dart did not have notice of the fact that the conveyance was a sham. The only complaint made by appellants on this score relates to the part of the charge wherein the jury was instructed that the fact that Dart knew that the property was homestead and that May and wife continued to reside thereon after the deed was made to Mrs. Cooper was not sufficient, in itself alone, to put him upon inquiry as to whether the deed was a mere sham or pretended conveyance. The charge is attacked as being upon the weight of the evidence. Dart knew that the lot was the homestead of May and wife, and that they and Mrs. Cooper continued to reside on the premises after the deed was made. The deed was sufficient on its face to convey the homestead, and the grantee in the deed was in actual occupation of the premises conveyed. Under these circumstances, it is true, as stated in the charge, that Dart's knowledge of the homestead character of the property and of the fact that May and wife did not vacate the premises, did not impose upon Dart the duty of making inquiry as to whether the conveyance was simulated. Eylar v. Eylar, 60 Texas, 319; Love v. Breedlove, 75 Texas, 649. The charge simply instructed the jury as to the legal effect, on the issue of notice, of the continued possession by May and wife of the premises deeded by them to Mrs. Cooper. Possession of land is some-

times notice of the real right and title of the possessor and sometimes not. When possession is relied on to show notice, it is not improper to instruct the jury as to the legal effect of the character of possession shown.. We find no error in the charge complained of, and it is approved.

On the question as to whether the knowledge possessed by Dart was received in the course of his agency, the evidence shows that he lived near the lot in controversy; that he knew the lot was the homestead of May and wife and had been for years; that he knew Mrs. Cooper was May's sister, and that she and her children lived with May and wife. This information was acquired while Dart was agent of the Watkins Company, but before there was any thought of the transaction out of which this litigation grew. It was acquired casually and in ordinary social intercourse. The court instructed the jury that the company would be chargeable only with such knowledge as came to Dart in the course of the transaction. The charge follows the rule laid down in Kaufman v. Roby, 62 Texas, 310. If for any reason, the rule is not applicable to this case, the fact is immaterial. Dart acquired no information before the inception of the transaction which tended to show notice of the fact that the conveyance to Mrs. Cooper was simulated. The charge given did not withdraw from the consideration of the jury any fact which had a tendency to show notice of the pretended character of the conveyance, and this was the only material issue.

On the issue as to whether Dart and May conspired to defraud the company the court instructed the jury that if they found that there was such conspiracy the company would not be bound by the knowledge of Dart that the deed was a mere sham. The charge given follows the rule laid down by this court in Campbell v. Crowley, 56 Southwestern Reporter, 373. The charge is objected to on three grounds: (1) Because there is no evidence raising such issue; (2) because Dart was a general agent and the company was bound by his knowledge; and (3) because, even if May did conspire with Dart to defraud the company, Mrs. May would not be estopped by the fraudulent conduct of her husband.

If, as contended by appellants, the conveyance was a mere device, and Dart knew the fact, then the effect of the transaction was to defraud the company. May and Dart both knew that a valid lien could not be created on the homestead, and if they had the pretended conveyance made and procured the company to put up its money on the faith of a lien apparently genuine, but really bogus, such facts would be sufficient to raise the issues of conspiracy.

The evidence shows that Dart was the agent of the company, which was a foreign corporation, and had charge of its business in Texas. He had full power to negotiate and close the deal with May. He does not appear to have been a corporate officer of the company. These facts do not take this case out of the rule stated in the charge of the court

on the issue of conspiracy. If an agent, no matter how general may be his powers, conspires with another to defraud his principal, notice to such agent will not be imputed to the principal. It is a question as to whether there was a conspiracy with intent to defraud, not whether agent, and one conspiring with a general agent to defraud the principal the agent possessed general or limited powers. The principal is entitled to protection against the fraud of a general agent on the same ground and with as great reason, as he is against the fraud of a special is entitled to as little consideration as if he had colluded with a special agent. What were the powers of the agent might be a material inquiry on an issue other than that of conspiracy. Thus, in this case, if Dart had authority to inaugurate, conduct and conclude the negotiations for the purchase of the notes from May, and if he knew that the conveyance to Mrs. Cooper was simulated, and if, acting within the limits of the discretion vested in him by the company, he elected, in behalf of the company and without any intent to defraud it, to make the loan, then notice to him would be imputed to the company. But if Dart intended to defraud the company, which is the theory presented by the charge before us, then he ceased to represent the company and the law will not impute notice to it of the facts known to him.

The contention that Mrs. May can not be estopped by the fraud of her husband may be noticed briefly. If the Watkins Company is entitled to a foreclosure of its lien, it is on the ground that it was an innocent purchaser of the notes sued on, and not on the ground that Mrs. May is estopped from setting up her homestead right in the lot in controversy. Graves v. Kinney, 66 S. W. Rep., 293. And if the company bought the notes without notice of the fictitious character of the conveyance to Mrs. Cooper, it is an innocent purchaser, and is entitled to recover as such. If May, the holder and payee of the notes, colluded with the company's agent, Dart, to defraud the company by selling to it notes secured only by a void lien on the homestead, the knowledge possessed by Dart will not be imputed to the company for the purpose of protecting Mrs. May's homestead right. By her act in joining in the conveyance to Mrs. Cooper, she placed it in the power of her husband to enter into such conspiracy and must abide the consequences. At the time she signed the deed she knew that her husband intended to borrow money on the notes.

The plaintiff was permitted to introduce in evidence a sworn statement of May and Mrs. Cooper to the effect that the deed to the latter was made in good faith and not for the purpose of defeating the homestead law. The statement was executed on the day the deed was made and as an inducement to the loan. The intervener requested a special charge, which was refused, that the jury should not consider the statement as in anywise affecting her. The evidence was clearly admissible on the issue as to whether the company was an innocent purchaser of the notes, and if it was such innocent purchaser, a fact which the statement

tended to establish, then it was entitled to be protected even against Mrs. May's homestead right. The court did not err in refusing to give the said charge.

The plaintiff introduced in evidence a letter written by May to Dart in 1893, in which May asked an extension on the notes, and in effect recognized the whole transaction as being bona fide and binding. The intervener requested a special charge instructing the jury not to consider the letter as in anywise affecting her. The letter was admissible for several purposes as against May, and it was admissible against intervener on one theory, at least., May was her most material witness on the issue as to whether Dart knew of the simulated nature of the conveyance to Mrs. Cooper, and the letter tended strongly to contradict the evidence given by him in her favor on that point. The charge asked required the jury to disregard the letter on all the issues between the plaintiff and intervener, when it should have been considered on at least one issue between them. There was no error in refusing to give the charge.

At the time of the trial Dart was dead. He had testified on a former trial and the plaintiff reproduced his testimony. This was done by producing a transcript of his testimony given at the first trial. The transcript was verified by a stenographer, who testified that the same was made by him and was a faithful copy, in substance, of stenographic notes taken by him of the testimony of the witness; that the notes were taken at the time the testimony was given and that he knew the notes to be correct. The stenographer did not know, independent of the facts stated, that the transcript was a correct copy of the testimony of the witness, but did know that the notes were full and correct and had been truly copied. The transcript was then permitted to be read in evidence over the objections of appellants. We find no error in this action of the court. If the stenographer could have testified that he remembered the substance of the evidence of the witness he would have been permitted to testify to his recollection thereof. The testimony of the deceased witness was taken by the stenographer literally as it was given, and was, beyond question, much more likely to be correct than the recollection of any witness. The notes of the stenographer were unintelligible to the uninitiated and it was therefore necessary to use the transcript thereof made by him.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.