**HOLMES v. UVALDE NAT. BANK et al.**
**(No. 6393.)**

(Court of Civil Appeals of Texas. San Antonio. May 12, 1920. Rehearing Denied June 2, 1920.)

**1. Trial ⚌232(2) — General charge controlling half amount sued for in case submitted on special issues properly refused.**

Where suit against a bank, its directors, and liquidating agent, to recover deposits made by plaintiff, was submitted on special issues, general charge to control the disposition of at least half the amount sued for was properly refused to plaintiff.

**2. Trial ⚌191(1)—Charge assuming as facts matters whereon jury could have found to contrary properly refused.**

Charge for plaintiff assuming as facts matters whereon the jury could have found to the contrary, which were important and decisive in the case, was properly refused.

**3. Appeal and error ⚌730(2)—Assignments as to giving or refusal of charges without stating substance not considered.**

Assignments of error complaining of giving of certain charges or refusal of others, without stating even substance of charges, should not be considered; a reference to bills of exceptions without giving substance of them not complying with rules of Courts of Civil Appeals, and it not being incumbent on an appellate court to search record for matters that should be supplied by appellant.

**4. Trial ⚌352(4) — Issue whether cashier converted plaintiff's funds held properly refused.**

In suit against a bank, its directors, and liquidating agent for deposits made by plaintiff, refusal of trial court to place before jury issue whether bank's cashier had converted any money of plaintiff to his own use *held* proper in view of the evidence.

**5. Banks and banking ⚌112—Bank's knowledge cashier had authority to draw · from plaintiff's loan account held not to make it liable for conversion.**

If a bank had known that its cashier had authority to draw out money deposited in a loan account of plaintiff, the fact would not have charged the bank with notice the cashier was loaning or pretending to loan such money

for plaintiff, nor make the bank liable for the cashier's conversion of it.

**6. Banks and banking ⚌108—Cashier's loans in name of bank for depositor did not bind bank.**

It was not within the scope of the agency of the cashier of a bank to make loans in the name of the bank for depositors, and the bank was not bound by his acts in making such loans.

**7. Principal and agent ⚌180—Rule of imputation of knowledge destroyed by action adverse to principal.**

Presumption that an agent has performed duty to communicate to principal knowledge possessed by him relative to subject-matter of agency, basis of rule imputing notice to principal of acts of the agent, is destroyed where the agent, nominally acting as such, in reality acts in his own or in another's interest adversely to his principal.

**8. Banks and banking ⚌116(6)—Bank not chargeable with knowledge of cashier acting adversely.**

Though a bank knew plaintiff had deposited his money, and that its cashier had authority to draw it whenever he desired, the bank was not charged with knowledge its cashier had authority from plaintiff to lend the money for him, nor that the cashier had appropriated plaintiff's money to his own use, and had forged notes to hide his crime; any action by cashier being adverse to bank, preventing imputation of his knowledge to it.

**9. Banks and banking ⚌258—National bank not authorized to contract to lend money of depositor.**

Under Rev. St. U. S. § 5136 (U. S. Comp. St. § 9661), a national bank had no authority to enter into a contract for loaning money of a depositor kept in a deposit account through its cashier authorized by the depositor to draw thereon to make loans.

**10. Banks and banking ⚌112—Bank not liable for moneys used by cashier in manner ultra vires as to bank.**

Where money is deposited in bank, and the cashier is authorized and paid as an individual by the depositor to act for the depositor in making loans, which acts, if performed by the bank, would be ultra vires, the depositor cannot recover from the bank for the peculations and conversions of the cashier.

**11. Banks and banking ⚌112—Bank not liable for misappropriation of funds by cashier to make loans for depositor.**

Where there has been collusion between cashier of bank and a depositor to secure services of cashier adversely to the bank, it is not liable for misappropriation by the cashier of funds drawn out under authority of the depositor to be used to detriment of bank by cashier in making individual loans for depositor.

Appeal from District Court, Uvalde County; Joseph Jones, Judge.

---

Suit by Daniel Holmes against the Uvalde National Bank and others. From judgment for defendants, plaintiff appeals. Affirmed.

W. D. Love, of Uvalde, and Denman, Franklin & McGown, of San Antonio, for appellant.

Martin & Martin, of Uvalde, and W. B. Teagarden and Clamp, Searcy & Clamp, all of San Antonio (Boyle, Ezell & Grover, of San Antonio, of counsel), for appellees.

FLY, C. J. Appellant instituted suit against the Uvalde National Bank, T. C. Frost, J. M. Kincaid, M. B. Walcott, F. J. Rheiner, J. C. Turman, and F. T. Kincaid, as directors of the bank, and Jake Schwartz, as liquidating agent, for certain deposits made by him, amounting to $48,788.81. The cause was submitted to a jury on the following issue, given by the court:

"Was F. J. Rheiner the agent of plaintiff, Daniel Holmes, in making the loans of the money that he turned over to said Rheiner?"

The issue was answered in the affirmative, and the second issue became unimportant and, under instruction of the court, was not answered. At the request of appellees, the jury was informed that the suit against the directors had been dismissed by appellant. Judgment was rendered that appellant take nothing by his suit as to the bank and Schwartz and Turman, Walcott, and Kincaid as the liquidating committee.

The evidence showed that appellant, without the knowledge or consent of the directors of the bank, entered into a personal agreement with F. J. Rheiner, by which the latter was to make loans for appellant out of money from time to time delivered to Rheiner personally by appellant, and Rheiner placed the money in the bank, with the full authority to draw it out whenever he so desired. He dealt with Rheiner as an individual and not as cashier of the bank. The arrangement entered into as to loaning the money was concealed by appellant and Rheiner from the directors of the bank. The money was loaned at different times by Rheiner, and the securities were placed in the hands of appellant by Rheiner. About five years elapsed between the time when the last loan was made, to wit, May 24, 1914, and the date of the filing of this suit, and the notes now claimed by appellant to be worthless were taken for or indorsed and delivered to appellant by Rheiner more than five years before this suit was filed. Appellant at no time dealt with Rheiner as cashier, and in the numerous letters written to him by appellant he was addressed as "Dear Ferdie." Appellant testified:

"Yes, sir; I told Rheiner in the beginning that I wanted him to loan my money for me. Yes, sir; I trusted him to do that. Yes, sir; I gave him authority to draw my money out to make loans and investments for me. Yes, I gave him authority to make loans, and he had as much authority as I did to make loans, and I put money at his disposal for that purpose—to make loans."

In April, 1916, there was a full settlement between appellant and Rheiner. Appellant swore that he placed about $7,000 in the bank when Rheiner was absent, and when he returned appellant gave him a check for the money, to be placed in the "loan account," to be loaned by him.

The first assignment states error in the refusal to give the following charge, requested by appellant:

"In any event, you will find your verdict herein for plaintiff for the sum of $26,779.65, being the aggregate or the principal of the four notes in evidence, purporting to be the notes of T. J. Martin, and the one note in evidence, purporting to be the note of W. B. Patterson, less the sum of $2,517.04 drawn from the loan account of plaintiff and carried into the $4,600 certificate of deposit in evidence; that is to say, said $24,262.61 is the balance of the total of said above-named notes after said sum of $2,517.04 is deducted therefrom. The remainder of the case you will consider from the evidence in the case and the charge of the court, and base your verdict thereon."

[1,2] The charge was properly refused. The cause was submitted on special issues, and yet appellant sought a general charge to control the disposition of at least one-half of the amount sued for. The charge assumed that Rheiner was acting as the cashier of the bank in making the loans, that it was responsible for his lack of care and judgment or his criminal acts, when that was the crucial point in the case. It assumed that the notes were forgeries, when the jury might have found that they were genuine. In other words, it was, in effect, an instruction for appellant on the whole case and made a farce out of the issue as to Rheiner being the agent of appellant alone in negotiating the loans, and not of the bank. It assumed that loaning money for depositors was within the powers and duties of the bank and dispensed with all inquiry into the doctrine of ultra vires as applied to the acts of Rheiner, if acting for the bank.

[3,4] The second, third, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error should not be considered. Each of them complains of giving certain charges or refusing others without giving even the substance of the charges. A reference to bills of exception without giving the substance of them does not comply with the rules, and it is not incumbent upon an appellate court to search the record for matters that should be supplied by the appellant. However, we have consulted the bills of exception referred to in the assignments and find that the charges asked were properly refused. If Rheiner was the agent and special representative of appellant and acted in lending the money not as cashier or agent of the

bank, then it did not matter that he converted the money of appellant to his own use, so far as the bank was concerned. In this connection, it may be stated that there was no adequate proof that Rheiner had converted any money of appellant to his own use. Appellant had the notes, he now wishes declared forgeries, in his possession for seven or eight years, and yet did not ascertain that they were forgeries. Appellant had colluded with Rheiner to lend money for him and deprive the bank of loans to which it was entitled, and now when his conspirator has been shown to be a defaulter and that the loans made by him for appellant are not satisfactory, he seeks to make the principal, against whom the conspiracy had been formed, responsible for the acts of the unfaithful servant. Rheiner was the agent of appellant, and not the agent of the bank, in making the loans, as found by the jury. It was not an issue as to whether the bank had notice of the relations between appellant and Rheiner. All of the testimony tended to show that appellant and Rheiner did not desire that the bank should know that Rheiner ·was lending money for appellant, but studiously concealed it from the bank. The evidence clearly showed that the loaning account of appellant was closed and a certificate of deposit delivered to appellant on or about April 23, 1916, and such settlement was fully accepted and agreed to by appellant, and such testimony tended to show that appellant, by his laches for more than two years, was estopped from claiming anything from the bank. There was not a particle of evidence tending to show that appellant expected or desired that Rheiner should act, in lending the money, for the bank; but, on the other hand, appellant and Rheiner did all they could to prevent the bank discovering anything about the loans. It follows that there was no such issue, and the court acted properly in refusing to place it before the jury.

[5] If the bank had known that Rheiner had authority to draw out the money deposited in the loan account of appellant, that would not charge the bank with knowledge that Rheiner was lending or pretending to lend it for appellant, nor make the bank liable for his conversion of it.

[6] The interests of the bank and appellant were directly antagonistic in the lending of money, and every loan made by Rheiner was depriving the bank of the opportunity and right to make loans. Under the circumstances if, as all the testimony shows, Rheiner was the agent of appellant in making the loans, he could not be the agent of the bank also. It was not within the scope of the agency of Rheiner to make loans in the name of the bank for depositors, and the bank was not bound by his acts in making such loans, and there was no evidence of ratification of his unauthorized acts, if such acts could be ratified. Henderson v. Railroad Co., 17 Tex. 560, 67 Am. Dec. 675; Bank v. Jones, 18 Tex. 823. Rheiner did not claim to be acting as agent for the bank, but altogether as agent of appellant.

[7] The rule imputing notice to the principal of the acts of agents is usually based upon the theory that it is the duty of the agent to communicate to his principal the knowledge possessed by him relating to the subject-matter of the agency, and the presumption that he has performed that duty. But this presumption is destroyed where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal. Mechem on Agency, § 1815; Kauffman v. Robey, 60 Tex. 311, 48 Am. Rep. 264; Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1057; Allen v. Garrison, 92 Tex. 546, 50 S. W. 335; Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 487; La Brie v. Cartwright, 55 Tex. Civ. App. 144, 118 S. W. 785; Allen v. Railroad, 150 Mass. 200, 22 N. E. 917, 5 L. R. A. 716, 15 Am. St. Rep. 185.

As said in the last-cited case by the Massachusetts' court:

"The general rule is that notice to an agent, while acting for his principal, of facts affecting the character of the transaction, is constructive notice to the principal. * * * There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent. It may be doubted whether the rule and the exception rest on any such reasons. It has been suggested that the true reason for the exception is that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and therefore knowledge of it, as matter of law, cannot be imputed to the principal, and the principal cannot be held responsible for it. On this view, such a fraud bears some analogy to a tort willfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master. Whatever the reason may be, the exception is well established."

[8] In this case we may assume that the bank knew that appellant had deposited his money in the bank, that Rheiner had the authority to draw it out whenever he desired, and still this would not charge the bank with knowledge that Rheiner had authority from appellant to lend the money for him, and certainly not that Rheiner had appropriated appellant's money to his own use and benefit and had forged notes to hide his crime. Up-

on no ground could the bank be charged with such knowledge. When Rheiner drew the money and loaned or misappropriated it, he clearly acted outside the scope of his authority and was not acting as the agent of the bank, but as the agent of appellant.

In the case of Brookhouse v. Union Publishing Co., 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 993, the facts were that one Moore was the guardian of the plaintiff, and also treasurer of the defendant, and used the defendant corporation for his private banking purposes, depositing money with its general funds and crediting his account, and charging his account as he withdrew it. He withdrew from his guardian bank account money, for which he received drafts payable to himself as guardian or order. These he indorsed and directed the assistant treasurer of defendant to deposit to his credit. He afterwards checked out the money for his personal use. The ward sought to charge the defendant with notice of the fraudulent character of the transaction. The court held that the defendant was an innocent conduit through which the guardian temporarily passed the money, and that it could not be charged therefor.

The evidence in this case shows collusion by appellant with Rheiner to obtain services from the latter which he as agent of the bank was not authorized to perform, and which deprived the bank of making loans, and no presumption of notice can indulged for the protection of a party to such collusion. As said in a New York case:

"The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent to further their own frauds upon the principal." Nat. Life Ins. Co. v. Minch, 53 N. Y. 144.

[9] It was not within the scope of the agency or implied power and authority of Rheiner as cashier of a national bank to agree with a party not connected with the bank to conduct the business of lending for him, from which the bank did not and could not derive any appreciable benefit, direct or indirect. The acts of Rheiner were clearly ultra vires, and did not bind the bank. The bank had no authority under the act creating it to enter into a contract for loaning money of a depositor such as existed between appellant and Rheiner. U. S. Rev. St. § 5136 (U. S. Comp. St. § 9661). The powers granted to national banks are:

"To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidence of debt, by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this title."

The powers are clearly defined, and, while national banks are authorized to lend money, there is no semblance of authority for lending money as the agent of its depositors. Such authority, if granted and exercised, would eventually destroy the great privilege of lending money for themselves given national banks, and involve them in complications which would almost inevitably lead to destruction. Especially would this be true when the lending is done without remuneration to the bank, and on the other hand is an expense in taking up the time of agents that should be used in the interest of the bank. No possible good could result to the bank from loans of money made for depositors. The Federal Reserve Act (38 Stat. 251) has no application, whatever, to the Uvalde National Bank, as defining its powers. The acts for which it is sought to hold that bank occurred before the enactment of the Federal Reserve Act, and, of course, it does not have any application to such acts, if it ever could apply to such bank.

[10, 11] If appellant had entered into a contract with Rheiner as cashier of the bank, and under that contract had deposited money to be invested in loans by the bank, and the cashier had embezzled the deposits, there is some authority for holding that the bank would be liable for the deposits, even though the agreement to invest was ultra vires; but where the money is deposited as in this case and the cashier is authorized and paid as an individual to act for the depositor in performance of acts, which, if performed by the bank, would be ultra vires, the depositor cannot recover. And when there has been collusion between the cashier and the depositor to secure the services of the cashier, not as representative of the bank, but adversely to it, there can be no doubt that the bank would not be liable for the misappropriation of funds drawn out of the bank under authority of the depositor to be used to the detriment of the bank.

The evidence shows clearly that appellant made Rheiner his agent, not as an agent of the bank, for he acted secretly and under cover with Rheiner and clearly indicated that he did not wish the bank to know anything about his relations with Rheiner nor have any connection with his loans. He and Rheiner sought to use the bank as a mere conduit for their schemes, and he concealed all his transactions with Rheiner from the bank until his friend had embezzled his money and absconded, and then he sought to make the victim of his scheming liable for his friend's perfidy. The trial court properly held, under the facts, that such liability would not attach.

The judgment is affirmed.