**COSGROVE et ux. v. NELSON. (No. 84.)***

(Court of Civil Appeals of Texas. Waco. Jan. 29, 1925. Rehearing Denied Feb. 26, 1925).

**I. Homestead 129(2)—Married woman's unacknowledged deed void even as against innocent third persons.**

Married woman's unacknowledged deed of homestead given pursuant to simulated sale and repurchase *held* absolutely void even as against innocent purchaser for value of purported purchase-money notes given pursuant to such repurchase.

**2. Homestead 122—Married woman held not estopped to deny validity of deed for want of proper acknowledgment by her.**

Married woman who joined in simulated sale and repurchase of homestead *held* not estopped to allege invalidity of deed for want of acknowledgment by her; her failure to acknowledge being neither intentional nor fraudulent.

**3. Homestead 129(2)—Innocent purchaser of purchase-money notes on homestead ·given 'en pursuant to simulated ·sale and repurchase held chargeable with knowledge of contents of deeds.**

Where owners of homestead to raise money thereon made simulated sale and repurchase, pursuant to which they gave purchase-money notes for amount of loan, *held* innocent purchaser for value of such notes was charged with notice of contents of deeds and with notice of fact that acknowledgment of one of them was forgery.

**4. Homestead 129(2)—Purchaser of purchase-money notes on homestead given pursuant to simulated sale held chargeable with duty to exercise ordinary care to ascertain homestead character of realty involved.**

Purchaser of purchase-money notes given by owners of homestead, pursuant to simulated

sale and repurchase for purpose of raising money, *held* required at least to exercise ordinary care to ascertain whether property was in fact homestead and not entitled to enforce purported purchase-money lien merely because she did not know of homestead character of property.

Barcus, J., dissenting.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by Anna Foss Nelson against Frank J. Cosgrove and wife. From a judgment for plaintiff, defendants appeal. Affirmed in part, and reversed and remanded in part.

W. L. Eason, of Waco, for appellants.
Bryan & Maxwell, of Waco, for appellee.

GALLAGHER, C. J. This case is before us on motion for rehearing. The motion is granted. All former opinions are withdrawn, and this is substituted as the opinion of the court in this case. Appellee, Mrs. Anna Foss Nelson, sued appellants, Frank J. Cosgrove and wife, Mrs. Shelby Cosgrove, to recover a balance due on four certain promissory notes in the sum of $500 each, with interest and attorney's fees as therein stipulated, and to foreclose a vendor's lien on a certain quarter block of land in the town of Crawford. Appellants alleged that the said quarter block of land upon which appellee sought to foreclose the vendor's lien claimed by her was at that time, and had been continuously for more than 20 years prior thereto, their homestead, upon which they had continuously resided, and upon which they had reared their family; that the transaction in which the notes sued on were given was a simulated sale of said property to one T. C. Jenson and a retransfer of said property to them, and that the same was in fact and on the face of the record an attempt to mortgage their said homestead; that the lien sought to be foreclosed was on that account void and nonenforceable. Appellee pleaded in reply thereto that she bought the notes sued on before maturity for a valuable consideration, without notice that the property by which they purported to be secured was the homestead of appellants; that appellants and said Jenson in the execution and delivery of said notes and in the transactions connected therewith intended to perpetrate a fraud on the First National Bank at Crawford; that appellee purchased said notes without any notice of such fraud; and that appellants were therefore estopped to set up their own fraudulent conduct as a defense to the foreclosure sought. The case was tried before the court and judgment rendered in favor of appellee against appellant Frank J. Cosgrove for the balance due on the notes in the sum of $2,667.50, and for foreclosure of lien to secure the same on said quarter block of land. The case is before us for review on appeal.

There is considerable confusion and contradiction in the evidence concerning matters of minor relevancy, but there are, in our opinion, undisputed facts sufficient to control the disposition of the case. Appellants were husband and wife. They had lived together as such for many years, and for 18 years prior to the transaction under consideration had occupied this particular quarter block of land in the town of Crawford as a homestead. At this particular time Mrs. Cosgrove was in Crawford and Mr. Cosgrove was in Dallas. Mrs. Cosgrove testified, omitting repetitions and irrelevant statements, concerning this transaction substantially as follows:

"Our house was in bad repair. We needed a new one or something done to the old one. I went and asked Mr. Jenson to borrow some money, and he told me he could let me have the money, or I could get it, if I would make it like this, and I did that, that he might use it to borrow money. I didn't know where he was going to get it. * * * I signed both the deed and the notes at the same time. * * * Mr. Sherrill didn't take my acknowledgment which is on this deed. I never appeared before him on the transaction whatever. I didn't talk to any one except Mr. Jenson when I signed these notes. * * * Mr. Jenson knew we owned the house we was in, and I asked him to get the money to build, and he said he could get the money, and he did. He said he could borrow the money from the Temple Building & Loan Company. * * * When I signed those papers he said, 'Now you can tear your house down and fix it any way you want to.' The purpose of the deed was to secure the money to build the new house with. With reference to what was said about selling the house and borrowing money he knew and I knew that was only to borrow the money. I asked him to borrow the money or lend it to me, and he said he could get it for me but it would be easier if I would deed the place to him. He knew and I knew that I wasn't selling it, but only to get the money from the Building & Loan Company that I made the deed. Mr. Cosgrove was in Dallas at the time. Mr. Jenson sent the deed to Mr. Cosgrove. The first time I ever saw the deed from Jenson and wife to me and my husband was a few months ago. I got it from Mr. Jordan. He phoned and told me he had the deed. When I went by I got the papers to show to my attorney. I don't know anything about a fire insurance policy on the house. I have never seen such policy."

This is substantially all the evidence tending to show any direct connection with the transaction on the part of Mrs. Cosgrove. Mr. Cosgrove testified that he was in Dallas when the transaction was had, and had no personal knowledge of it; that he signed the deed to Jenson and mailed it back to Jenson after signing; that he knew the notes had been executed, but supposed Jenson had them; that he thought it was strange to execute vendor's lien notes on a homestead, but

he had never raised any question as to the validity of the notes.

The deeds and notes referred to in the above testimony of Mrs. Cosgrove were introduced in evidence by appellee. She first introduced a deed from F. J. Cosgrove and wife to T. C. Jenson, conveying said property. It was in the ordinary form of a warranty deed. It recited a consideration of $1. It was dated August 12, 1919, and was signed by both of appellants. It bore an acknowledgment by Frank J. Cosgrove before a notary public of Dallas county, dated August 23, 1919, and the genuineness of such acknowledgment is not questioned. It also bore a purported certificate of acknowledgment by Mrs. Cosgrove. Such certificate purported to show an appearance by her before "W. M. Sherrill, a Notary Public and J. P. ex officio." It was in proper form for an acknowledgment by a married woman, and was dated August 12, 1919. It was shown by said Sherrill that he did not make or sign said certificate nor authorize the same to be signed. He further testified that Mrs. Cosgrove never appeared before him; that he never took her acknowledgment to said deed; and that he never saw such deed until a short time before the trial of this case. This deed was filed in the office of the county clerk of McLennan county, Tex., for record on the 15th day of June, 1920.

Appellee also introduced in evidence a deed from T. C. Jenson and wife to Francis J. Cosgrove and wife, Shelby Cosgrove. The consideration recited therein was $250 cash and the further consideration of four vendor's lien notes, bearing even date with said deed, and due one, two, three, and four years after date, respectively, each for the sum of $500, with interest and attorney's fees. This deed was dated August 12, 1919, and was acknowledged by both grantors on the 1st day of July, 1921. It was turned over to appellee some time in August, 1921, and filed in the office of the county clerk for record by her or at her direction on the 23d day of August, 1921. Appellee also introduced in evidence the four notes described in said last-mentioned deed. They were all dated August 12, 1919, and payable as recited in said deed. Each of said notes acknowledged a vendor's lien on the land involved in this case to secure the same, and each was payable to T. C. Jenson and signed by Frank J. Cosgrove and Mrs. Shelby Cosgrove. Each of said notes had indorsed thereon a transfer from T. C. Jenson to the First National Bank of Crawford and an indorsement in blank by the First National Bank of Crawford by T. C. Jenson, cashier. These indorsements were not dated.

Appellee acquired these notes from T. C. Jenson; but whether he was acting in his own behalf or in behalf of the bank at that time is not specifically shown. At the time he sold her the notes he showed her an insurance policy on the house and on the furniture of appellants situated therein, and told her that if the house burned down she would get her money. The date of this transaction is involved in some confusion, but the great preponderance of the evidence shows that it was on or about the 20th day of October, 1919. Appellee had known T. C. Jenson all her life. On the 8th of September he wrote her a letter, stating in substance that both she and her mother had accounts in said bank, and that he knew of four vendor's lien notes for $500 each, drawing 10 per cent., and considered them perfectly safe. He further stated he would be glad to show the notes and explain things to her fully. What transpired at the time she purchased the notes seems to be shown by her testimony only. Such testimony, omitting irrelevant statements and repetitions, is substantially as follows:

"After the receipt of this letter I saw Mr. Jenson at the First National Bank of Crawford and talked with him with reference to the notes here sued on. I bought the notes on that visit and paid for them. He told me they were safe. I asked him for security, and he said I had the house, had been a deed, and the deed was recorded. He said they were good notes. I told him if they were good notes and had security I would buy and he said he had the house for security. He said he had a lien on the house. He told me what house. They were just building the house. I had the notes put in my box at the bank. Jenson gave them to me and I told him to leave them in the box at the bank where I had all my papers. I did not have a conversation with Mrs. Cosgrove about the notes for nearly two years. * * * I did not know at the time I bought the notes that the sale of the property from the Cosgroves to Jenson and back was just a simulated sale for the purpose of getting money. Jenson told me they were good notes. I didn't know at the time that they were claiming the property as a homestead. The first time I saw the deed (referring to the deed from Jenson and wife to Cosgrove and wife) was the day I carried it down to be recorded. I asked Mr. Jordan about the deed, and he said it was not recorded and it ought to be. Jenson told me all the time that it had been. Mr. Jordan delivered the deed to me and I took it to Waco. * * * I didn't discover the fact that the deed was not recorded until August 23, 1921. At the time I bought the notes from Mr. Jenson the house was being built and there was nobody living in the house. I knew where the Cosgroves were living at that time. Mr. Jenson told me across the street in his house.. I paid Mr. Jenson for the notes at the time I got them from him. I paid him $2,000. * * * Mr. Jenson said, 'I advise you to take the notes. They are safe.' I said I rather some one looked over them, but he said they were perfectly safe, 'You have a lien on the house,' and I decided they were good notes and bought them. * * * The bank went under in 1921."

There is no further evidence of any inquiry or investigation by appellee. There was testimony tending to show that Jenson caused the failure of the bank or contributed thereto. He did not testify in the case.

About the date of said deed and notes aforesaid appellants moved off the premises in question and into a house in the immediate vicinity belonging to Jenson. The old house was torn down and a new house erected. Mrs. Cosgrove decided on the plan of the house and employed a contractor to erect it. Jenson seems to have arranged for the purchase of the material to construct the new house, but had it charged to F. J. Cosgrove. The lumber dealer got his money from time to time at the bank. It was paid to him sometimes by Jenson and sometimes by Mrs. Cosgrove's daughter, who was working at the bank at the time. The contractor was paid at Jenson's bank by checks drawn thereon in the name of Mrs. Cosgrove by Jenson or by her daughter. Some time about the latter part of October appellants moved back into the new house. There was a barn situated on the premises. Mrs. Cosgrove testified that she kept a cow in said barn during the construction of the new house. There is testimony tending to corroborate her and some testimony tending to discredit her statement. She also testified that there was a garden on said premises, and that she got vegetables out of the same during the construction of the house. The only other testimony concerning this garden was that of one of the workmen, who said he didn't notice a garden. There is no testimony in the record tending to show any abandonment of the use of said premises as a homestead. On the contrary, the testimony shows conclusively that the very purpose of the transaction under consideration was to make the premises more suitable and desirable as a home.

[1] While Mrs. Cosgrove signed the deed from her husband and herself to Jenson, the undisputed evidence shows that she never acknowledged it, and never appeared before Sherrill or any other officer for the purpose of acknowledging it. Without such acknowledgment said deed was wholly insufficient to divest appellants of the title to the property, and therefore necessarily insufficient to vest Jenson with any interest therein. So far as the issues in this case are concerned, it was absolutely void, even as against an innocent purchaser for value without notice. Wheelock v. Cavitt, 91 Tex. 679, 682, 683, 45 S. W. 796, 66 Am. St. Rep. 920, and authorities there cited. See, also, Veeder v. Gilmer, 103 Tex. 458, 129 S. W. 595.

[2] It is contended that Mrs. Cosgrove was estopped to deny that she acknowledged said deed. There is no evidence that she knew as a fact that said deed was invalid without her acknowledgment. She was not requested to acknowledge it nor told that it ought to be acknowledged by her. There is nothing in the statement of facts tending to show that she ought to have reasonably anticipated that Jenson or any one else would cause a false and forged certificate to be placed thereon, purporting to show that she had acknowledged it, and that he or any one else would then pretend that such deed had been in fact acknowledged by her. Married women are not estopped unless their conduct with reference to the particular matter involved has been intentional and fraudulent. Steed v. Petty, 65 Tex. 490, 496; Parker v. Schrimsher (Tex. Civ. App.) 172 S. W. 169 (writ refused); Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066. The case of Yaseen v. Green (Tex. Civ. App.) 140 S. W. 824, is relied on by appellee to support the contention that Mrs. Cosgrove was estopped to question the genuineness of said false and forged certificate and acknowledgment. That was a suit by Mrs. Yaseen and her husband to cancel a deed made by them to Green, by which they conveyed to him property which constituted their homestead at and prior to the time of conveyance. In that case the deed was mailed to the wife for her signature and by her returned to her husband. He delivered it to Green and received in cash the consideration for the sale. When he delivered it there was indorsed thereon a certificate in due form and actually signed by a notary public, purporting to show that Mrs. Yaseen had acknowledged the same. It was shown that such certificate was probably on the deed when Mrs. Yaseen signed it, but it was not shown that she discovered such fact. It was also shown that she never appeared before the officer for the purpose of acknowledging such deed. We quote from the opinion in that case as follows:

"It might be said that, if she had the deed in her hands with the false acknowledgment upon it, and was aware of the existence of said false acknowledgment and its import, that in sending it back to her husband for the purpose of having it delivered to and acted upon by the grantee as a duly acknowledged instrument, she ought to be estopped by her act to set up its invalidity. But we find no testimony that goes to show that she, by such indirect means, or otherwise, knowingly or fraudulently represented that she had appeared before the notary to acknowledge the deed. The burden was upon defendant to establish the facts creating an estoppel, and we conclude that the testimony was not sufficient for that purpose."

The judgment of the trial court was in favor of the purchaser Green, but the Court of Civil Appeals reversed such judgment and rendered judgment in favor of Mrs. Yaseen and her husband for the recovery of the property, and the Supreme Court refused a writ of error.

The facts tending to show estoppel in that case were stronger than the facts in the case here under consideration, nevertheless they were held insufficient to sustain such claim. Not only is there nothing in the statement of facts in this case to show that Mrs. Cosgrove ought to have reasonably anticipated that Jenson would cause a false certificate of acknowledgment to be placed on said deed and would then represent to a purchaser of said notes that she had in fact appeared before said officer and acknowledged the same, and that said certificate was genuine and true, and said deed valid and effective to convey the title to said property, but there is nothing therein to show that he even exhibited said deed to appellee, nor that he ever represented to her that Mrs. Cosgrove had in fact appeared before said Sherrill or any other officer and acknowledged the same. Neither is there anything in the statement of facts to show that appellee in fact knew that any such certificate of acknowledgment was indorsed on said deed, or relied on the same in any way. All, or nearly all, of the money for building the new house was advanced by Jenson for himself or for his bank before appellee ever purchased the notes. Jenson devised the scheme and executed it. No estoppel arose in his favor on account of the benefits received by appellants. We do not think Mrs. Cosgrove is, under the facts shown in this case, estopped to deny that she acknowledged said deed nor to take advantage of such failure to defeat the title purported to be conveyed thereby. Daniel v. Mason, 90 Tex. 240, 38 S. W. 161, 59 Am. St. Rep. 815; Williams v. Ellingsworth, 75 Tex. 480, 483, 12 S. W. 746; Johnson v. Bryan, 62 Tex. 623; Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65; McLaren v. Jones, 89 Tex. 131, 33 S. W. 849; Wadkins v. Watson, 86 Tex. 194, 24 S. W. 385, 22 L. R. A. 779; Cauble v. Worsham, 96 Tex. 86, 70 S. W. 737, 97 Am. St. Rep. 871; Bradford v. Knowles, 78 Tex. 109, 116, 117, 14 S. W. 307; Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882 (writ refused), and authorities there cited.

[3, 4] The statement of facts in this case shows that appellee did not see either of the deeds herein involved at the time she purchased the notes or prior thereto. Although she did not see said deeds nor have any actual knowledge of the contents, she was charged with notice of such contents just as if she had actually inspected them. Sanger v. Brooks, 101 Tex. 115, 118, 105 S. W. 37; Gaston et al. v. Dashiell, 55 Tex. 508, 516, 517, and authorities there cited; Spencer v. Jones, 92 Tex. 519, 50 S. W. 118, 71 Am. St. Rep. 870; Gilbough v. Runge, 99 Tex. 539, 91 S. W. 567, 122 Am. St. Rep. 659. She is therefore charged with knowledge that the deed purporting to convey the title from Cosgrove and wife to Jenson recited a considera-

tion of $1, and that the deed from Jenson and wife back to the Cosgroves was dated the same day and recited a consideration of $250 cash besides the four notes purchased by her in the aggregate sum of $2,000. She was charged with knowledge of the fact that the deed from Jenson and wife to the Cosgroves had not at that time been acknowledged; that it had not been recorded as Jenson falsely represented to her it had been; and also that it had probably never been delivered. Since no representations were made with reference to whether the deed to the Cosgroves to Jenson had been acknowledged by Mrs. Cosgrove, we think appellee was charged with notice that the certificate of acknowledgment on such deed was a forgery. Whether the same was a forgery or not, if presented to her without representations amounting to an estoppel, was a question she would have had to have decided at her peril. The evidence is undisputed that the property was homestead. There is no evidence tending to show that it ceased to be such for a single instant during this transaction. Immediately after the simulated sale and repurchase, appellants began the building of a new house on the premises, and it was nearly finished when appellee bought the notes. It is true she says she did not know it was appellants' homestead, but no estoppel is pleaded or claimed with reference to the homestead character of the property. It is not sufficient that she did not know its homestead character. She was required at least to exercise ordinary care to ascertain that it was not appellants' homestead. The case of Sanger v. Brooks, cited above, was a suit to cancel a vendor's lien arising out of a transaction in which Brooks and wife conveyed their homestead to one Odom, who immediately reconveyed it to them in consideration of certain notes, retaining a lien to secure the same. The conveyance, reconveyance, and execution of the vendor's lien notes were all simultaneous as in this case. Our Supreme Court in that case held that the transaction showed on its face an attempt to incumber the homestead. We quote from the opinion in that case as follows:

"So here Sanger Bros. claiming a lien arising through a chain of conveyances are affected with notice of all the facts disclosed by such conveyances. They were sufficient reasonably to apprise them that there was no sale from Brooks and wife to Odom, from the fact that a deed which purports a sale was executed at the same time that Odom conveyed back to Brooks and wife, and that it was merely a simulated transaction for the purpose of fixing a vendor's lien upon the property. It is as plain as if Brooks and wife had executed a mortgage upon the property. It makes no difference that Sanger Bros. did not know that the property was the homestead of Brooks and wife. The Constitution declares a mortgage

or lien upon the homestead void, and a party accepting a lien must know that the property is not a homestead. Sanger Bros. being bound to take notice from the conveyance that the intention of the parties was merely to give a lien, cannot claim the position of innocent purchasers as to that matter."

The rule laid down in said case of Sanger v. Brooks is applicable here, and should control the disposition of this case. The judgment of the trial court in favor of appellee against appellant Frank J. Cosgrove for the unpaid balance of the notes sued on is affirmed. The further judgment of the trial court foreclosing lien on the homestead of appellants is reversed, and judgment is here rendered that such foreclosure be denied and said land discharged from the purported vendor's lien asserted by appellee in this case.

BARCUS, J. (dissenting). I regret that I cannot agree with my associates in the disposition of this cause.

Appellants alleged that the transaction by which they obtained the money to improve their homestead was a simulated transaction. The record shows that Mrs. Cosgrove signed the notes sued on, and also signed the deed to the property from her to Jenson, but that she did not, for some unaccountable reason, acknowledge same. There is an acknowledgment on the deed, of date August 12, 1919, the same day the deed is dated and the same day that she says she signed same. Her agent, Mr. Jenson, sent the deed to Dallas to have Mr. Cosgrove sign same, presumably with the forged certificate thereon, as there was no testimony to the contrary. La Coste v. Odam, 26 Tex. 459; Armistead v. Benefield (Tex. Civ. App.) 244 S. W. 391. While the principal is not liable for the criminal acts of his agent (Mitchell v. Mims, 8 Tex. 6; Waters-Pierce Oil Co. v. State, 19 Tex. Civ. App. 1, 44 S. W. 936), yet forgery and the uttering of a forged instrument have in them an element of fraud, and where such fraudulent act is committed by an agent against his principal and rights of otherwise innocent third parties come into existence on the supposition that the forged instrument is in fact genuine, I think the consequences of such fraudulent act on the part of the agent ought to be visited upon the principal, rather than upon one who did not know of the forgery and acquired rights based upon the supposition that the instrument was genuine. At the time appellee purchased the notes she was informed by Jenson, the agent of appellants, that the papers were in proper form, and that the lien was a valid first lien on the property, and I do not think all of the evil consequences of the forgery should be charged against appellee and none against appellants under the facts in this case. Since appellants' agent, Jenson, had authority to obtain the money for appellants under plan previously agreed upon, it would be within the scope of his authority to put the deed in circulation and sell the notes described therein. Where parties have obtained funds upon a forged instrument which they have authorized or permitted to be put into circulation, before they cancel same they should be required to return the consideration which they have obtained on said forged instrument. When appellee purchased the notes she had no actual knowledge that the property was being claimed by appellants as their homestead, and there was nothing to put her on notice that the property had been appellants' homestead, unless the recitations in the deed from the Cosgroves to Jenson and the deed from Jenson to the Cosgroves were sufficient. Neither of these deeds were on record, and if she had examined same and ascertained the consideration named therein, she would have found that the deed from the Cosgroves to Jenson recited $1 consideration, and that the deed from Jenson to the Cosgroves recited $2,250 consideration, and if she had then examined the property or made inquiry she would have found that a new house was built on the property after the deed from the Cosgroves to Jenson was executed, and that the difference in the consideration named in the deeds was the value of the improvements being placed thereon.

Appellants do not claim that the funds did not go into the house. Their only defense was that the lien was invalid because it was a mortgage on the homestead, and because Mrs. Cosgrove did not acknowledge same. Appellants pleaded and Mrs. Cosgrove testified that the transaction was a simulated scheme to obtain money with which to build appellants a new home. The evidence is conflicting, but was sufficient to authorize the trial court in finding that at the time the notes and deeds were signed the property was not occupied as a homestead by appellant. If it was not a homestead, the deed from Cosgrove himself would convey title without his wife's signature. If it was their homestead, the deed did not convey title without the wife's acknowledgment, unless she is estopped by having had same delivered with the forged certificate attached thereto (Yaseen v. Green [Tex. Civ. App.] 140 S. W. 824); or, if appellants were not living on the property when the notes were executed and sold to appellee, and she knew of no facts which would lead her, in the exercise of reasonable prudence, to believe the property was the homestead of appellants, appellants could not plead homestead as against appellee's lien to secure the notes. Appellants signed the deed and the notes and had same put in circulation; the deed appearing to be properly acknowledged. Appellants ac-

cepted the money on the notes and used the proceeds thereof in building a house on the property in controversy, and in my opinion, by reason of said acts, they are now, as a matter of law and equity, estopped from claiming the deed was a mortgage. I recognize the rule that where instruments are recorded parties are charged with notice of their contents. Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37. In this case, however, the deeds were not recorded, and Jenson, the agent of appellants, informed appellee that the notes were first vendor lien notes, and appellee relied on Jenson's statements, and did not personally inspect either of the unrecorded deeds. Martin v. Granger (Tex. Civ. App.) 204 S. W. 666.

A married woman should not be permitted to avail herself of a defective acknowledgment which she has had placed in circulation when she has reaped the benefits therefrom. Moerlein v. Scottish Mortgage & Inv. Co., 9 Tex. Civ. App. 415, 29 S. W. 162, 948. The law extends its protection to the rights of married women and will protect their homes, but it will not permit them to act fraudulently to the injury of others. McKinney v. Matthews (Tex. Sup.) 6 S. W. 793; Vann v. Denson, 56 Tex. Civ. App. 220, 120 S. W. 1021. To allow a married woman to profit by her own positive fraud, or to allow her to perpetrate a fraud by disputing the validity of a vendor's lien which she has caused to be placed on her property, would be to pervert the law which was passed for her benefit into an instrument of fraud. Ryan v. Maxey, 43 Tex. 192; Cravens v. Booth, 8 Tex. 243, 58 Am. Dec. 112. The legal disability of coverture carries with it no license or privilege to practice fraud or deception on innocent persons, nor will the disability be permitted to protect them in so doing. 58 Am. Dec. 114, notes. The Constitution and statutes of this state are made for protection, and not to be used as instruments to perpetrate fraud on innocent victims. Jones' Estate v. Neal, 44 Tex. Civ. App. 412, 98 S. W. 417; Clayton v. Frazier, 33 Tex. 91; Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 487; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Heidenheimer v. Stewart, 65 Tex. 321; Eylar v. Eylar, 60 Tex. 315; Hurt v. Cooper, 63 Tex. 363.

It is an axiomatic principle that actual, positive fraud vitiates all transactions, and no person shall be permitted to profit by his own positive fraud, and no fraudulent instrument should be canceled until the party profiting by the actual fraud perpetrated has restored the party defrauded to his original position. 10 R. C. L. p. 688.

In my opinion, the judgment of the trial court should be affirmed.