**THREET v. LYNCH et al.   (No. 669.)**

Court of Civil Appeals of Texas. Waco. Nov. 8, 1928.

Rehearing Denied Dec. 20, 1928.

W. V. Dunnam and F. M. Fitzpatrick, both of Waco, for appellant.

Bryan & Maxwell, W. C. Taylor, and Taylor, Atkinson & Farmer, all of Waco, and J. H. Hooker, of McGregor, for appellees.

STANFORD, J. This suit was filed by appellee, Eugene Lynch, against W. V. Hanover, Paul Garrett, and R. H. Threet, as principal makers, and Henry Hanover, Walter Hanover, and C. P. Shaffer, as indorsers of two notes, both dated January 1, 1924, one for $9,000 and the other for $1,073.25; both said notes falling due January 1, 1925, and both said notes having been given in extension of a former note and the interest on same. Appellant denied liability on the ground that he was an accommodation maker, and that the money was borrowed for the benefit of W. V. Hanover and Paul Garrett, that the said W. V. Hanover was the agent of appellee, Lynch, and that he procured the signature of appellant by false inducements, and that appellee had notice of said false

inducements, and that he was only a surety, through his agent, W. V. Hanover. Appellant also claimed that he, as such accommodation maker, was released by reason of the extensions of said note without his consent, etc. The pleadings of the parties are voluminous, and will not be set out here, as same are sufficient to raise all the issues made by the evidence. The court submitted the case to a jury on twenty-nine special issues, some of the answers to which will hereafter be set out. The court entered judgment for appellee for the amount of said notes sued upon against appellant, Threet, W. V. Hanover, and Paul Garrett, jointly and severally, and denied appellee a recovery against Walter Hanover, Henry Hanover, and C. P. Shaffer, the indorsers on said notes. There are other provisions of said judgment relating only to appellant's cross-defendants W. V. Hanover and Paul Garrett, not necessary to mention, as same do not affect appellee's rights. Appellant alone has appealed, and presents the record here for review upon forty-six propositions. As we view the case, it is not necessary to discuss all of appellant's assignments or to consider them in the order presented.

In response to the eighth special issue, the jury found: "R. H. Threet did not sign the note dated November 6th, 1922, in the sum of $9,000.00 and the note in suit dated January 1st, 1924, payable to Eugene Lynch, for the purpose of lending his name to the defendants W. V. Hanover and Paul Garrett without receiving value therefor."

In response to the twenty-ninth issue, the jury found: "The money received from Eugene Lynch on November 6th, 1922, when the first note to the said Lynch was executed, was gotten for the use and benefit of R. H. Threet."

The evidence is sufficient to show that in about 1919 appellant, R. H. Threet, W. V. Hanover, and Paul Garrett borrowed $8,000 at the Provident National Bank of Waco. This money was borrowed for the benefit of W. V. Hanover and Paul Garrett. W. V. Hanover paid $1,000 on this note, and appellant made certain payments. Said note was renewed many times and carried by said bank until about 1921, when said bank refused to carry said note longer and threatened to sue on same, when appellant agreed to and did take over the debt at the Provident National Bank, and gave his own individual note, signed only by himself, to said bank for the balance due, or at least $4,000 of it, and on or about the same time W. V. Hanover and Paul Garrett were indebted to appellant in the sum of about $2,500. Whether or not this indebtedness arose by reason of appellant's making payments on the Provident National Bank note is not clear. At any rate, appellant was insisting on W. V. Hanover's and Paul Garrett's paying him said sum. Said parties were unable to pay same and unable to borrow the money; so appellant borrowed the $2,500 at the First National Bank of McGregor and gave his own individual note for same, and W. V. Hanover and Paul Garrett agreed verbally with appellant that they would pay said note when it became due, although they never signed same. When this note fell due, said Hanover and Garrett failed to pay same, and on or about the same time appellant took notes of W. V. Hanover and Paul Garrett, payable to himself, for the amount said parties were indebted to him by reason of his taking over the debt to the Provident National Bank and on all other matters, and also for some sheep sold by him to W. V. Hanover. On November 6, 1922, appellant's note to the Provident National Bank was due, and he also owed the First National Bank of McGregor the note for $2,500, with interest and attorney's fees. So on said date appellant, Threet, W. V. Hanover, and Paul Garrett executed a $9,000 note to appellee, Lynch, for borrowed money. This $9,000 so borrowed was delivered to appellant, Threet, and he received and used all of it to pay what he individually owed the Provident Bank and the $2,700 or $2,800 he owed the First National Bank of McGregor. Neither Hanover nor Garrett received any part of the proceeds of said $9,000 loan. This $9,000 loan from Lynch was renewed in 1924 by all three of said parties signing a $9,000 note and one for $1,073.25 for the interest, which two notes are made the basis of this suit. We think the evidence was ample to authorize the findings of the jury to special issues Nos. 8 and 29. By reason of appellant's taking over and assuming to pay the balance due the Provident Bank and executing his individual note therefor, signed only by himself, and by reason of his taking the notes from W. V. Hanover and Paul Garrett for the amount of their indebtedness to him, including the amount for which he had become liable on their behalf, appellant thereby became individually and primarily liable for the amounts due each of said banks. The money borrowed by appellant on the note for $9,000 given to appellee November 6, 1922, was for his own use and benefit, and, he having received same and applied it to his own obligations, made him primarily liable for same. It being established by the findings of the jury, supported by the evidence, that appellant was not an accommodation maker of the notes upon which this suit was brought, but that said notes were given in renewal of a note which was given for borrowed money for the benefit of appellant, and which money appellant did receive and use for his own benefit, we overrule all of appellant's contentions based on his claim to the effect, that he was an accommodation maker of the notes upon which this suit was based.

██ In response to special issue No. 1, the jury found: "On November 6th, 1922, at the time the defendant R. H. Threet signed the note for $9,000.00, payable to the plaintiff

Eugene Lynch, defendant W. V. Hanover was not the agent of Eugene Lynch."

To the third special issue the jury found, in substance, that, at the time or prior to the time the note dated November 6, 1922, was signed by defendant Threet, the defendant W. V. Hanover did represent to defendant Threet that he would procure as principals and joint makers of said note the signatures of J. D. Naylor and of defendants Henry Hanover, Walter Hanover, and C. P. Shaffer. In response to the fourth special issue, the jury found that the defendant Threet relied upon said representations; and, in reply to the fifth issue, the jury found, in effect, that defendant Threet would not have signed said note but for said representation of the said W. V. Hanover. But in response to issue 3a, the jury found that, at the time of said representation by W. V. Hanover, the said W. V. Hanover was not the agent of the plaintiff, Lynch. The record shows that Eugene Lynch had lived at McGregor, Tex., but that, at the time the $9,000 loan was procured from Eugene Lynch, November 6, 1922, he lived at Bristol, Tenn.

Eugene Lynch testified: "I did not give the said W. V. Hanover any authority whatever to make this or any other loan for me. I loaned out my money myself and did not intrust the matter to any one else * * * I gave W. V. Hanover no authority to make any loans for me or to solicit loans for me or to represent me in loan matters in any way whatsoever. I formerly lived in Texas and knew Mr. Hanover very well. Knowing that I had some money, Mr. Hanover occasionally would write me on behalf of other persons asking me to make loans to them."

Mr. Hanover testified: "Mr. Threet was the first one to mention to me the borrowing of this $9,000.00 that these notes represent. He came to me and asked me if I knew where he could borrow any money to take up those notes at the Provident National Bank. I didn't know of anybody unless Mr. Eugene Lynch had some. Mr. Threet then asked me if I would write Mr. Lynch at once to see if he had any money and if he would lend it * * * I had never had any instructions of any kind from Mr. Lynch about making loans for him, and he had never authorized me to make or solicit any loans for him; he did not authorize me to solicit this loan to Mr. Threet. Mr. Lynch never paid me any commission for making any loan for him and he never asked me to solicit a loan for him * * * I was working in Mr. Threet's behalf in trying to get the money from Mr. Lynch."

The findings of the jury to special issues Nos. 1 and 3a above are amply supported by the evidence. At the time the $9,000 note of date November 6, 1922, was sent to Eugene Lynch at Bristol, Tenn., in procuring the loan for said amount, it was signed by appellant, R. H. Threet, W. V. Hanover, and Paul Garrett as joint and several makers, and was also indorsed by J. D. Naylor, Henry Hanover, Walter Hanover, and C. P. Shaffer. If W. V. Hanover did represent to appellant, Threet, that he would procure, as principals and joint makers of said note, the signatures of J. D. Naylor, Henry Hanover, Walter Hanover, and C. P. Shaffer, as found by the jury, and if appellant, Threet, did rely upon said representations and was thereby induced to sign said note, as found by the jury, still, as W. V. Hanover was not the agent of appellee, Lynch, in securing said loan, and notice to Hanover was not notice to appellee, and appellee was in no way responsible for the representations of the said Hanover, same in no way affected his rights. Appellant, Threet, appearing to be a joint maker of said note with W. V. Hanover and Paul Garrett, no representations or agreements between said makers, in the absence of notice thereof to appellee could in any way affect appellee's rights to a recovery against them as principal makers. So the representations of Hanover to Threet that he would procure those who did indorse said note, to sign same as makers, constituted no defense to appellant, Threet. Furthermore, if said loan was procured for the use and benefit of appellant, Threet, as found by the jury, and he received the benefit of same, as held above, he was liable to appellee for the amount of said note, regardless of any agreement he may have had with the other makers as to getting others to sign as makers. Article 5936, § 60, Revised Statutes.

If the money was borrowed for the use and benefit of W. V. Hanover, as appellant contends, then the interests of Hanover and Lynch were so adverse as to preclude the relation of principal and agent between said parties, and the actions of Hanover could not be binding upon Lynch, nor notice to him chargeable to Lynch. Holmes v. Uvalde National Bank et al. (Tex. Civ. App.) 222 S. W. 640; Richardson et al. v. Wesley et ux. (Tex. Civ. App.) 1 S.W.(2d) 1098.

Appellant, Threet, appearing upon the face of said note as a joint maker with W. V. Hanover and Paul Garrett, and his liability thereon appearing to be joint and several with said parties, and there being no evidence that appellee, Lynch, had any notice to the contrary, we think, in any event, as between appellant, Threet, and appellee, Lynch, the liability of Threet on said note was that of a principal maker for value, and not an accommodation maker or indorser. Regardless of what the relation may have been as between Threet and W. V. Hanover and Paul Garrett, under this record, as between Threet and Lynch, the liability of the former must be held to be fixed and not contingent, a primary and not a secondary liability, and, this being true, an extension of said note without his consent would in no manner lessen his obligation, nor release him

therefrom. Sections 29, 60, and 192, Negotiable Instruments Act (articles 5932, 5936, 5948); Neyland v. Lanier (Tex. Civ. App.) 273 S. W. 1022, and cases cited. And, if such extension did operate to release J. D. Naylor, C. P. Shaffer, and Walter and Henry Hanover, all of whom were only indorsers on said note, same could constitute no grounds for complaint by appellant, as his obligation, between himself and appellee, was primary, and the obligation of said indorsers was only secondary. If they had remained bound on the notes, appellant would not have been entitled to a judgment over against them, but, if judgment had been rendered against said indorsers, they would have been entitled to judgment over against appellant and others primarily liable. Appellee, Lynch, is the only one in a position to complain of said indorsers being released.

■ Appellant complains further of the judgment, because the jury failed to answer special issue No. 13, alleging the answer to such issue was material to his defense. In issue No. 8, the court submitted to the jury to find whether or not appellant, Threet, signed the original note for $9,000, of date November 6, 1922, and the note in renewal thereof dated January 1, 1924, for the purpose of lending his name to the defendants W. V. Hanover and Paul Garrett without receiving value therefor. To this the jury answered, "No"; that is, in response to this issue the jury found, in effect, that appellant was not an accommodation maker of said notes. Then follows a series of issues to be answered only in the event the jury had found that appellant was an accommodation maker of said notes. Under the court's instruction, in view of their finding to the eighth issue, the jury was not required nor authorized to answer special issue No. 13. Having found in response to the eighth issue that appellant was not an accommodation maker of said notes, the matter of any extension granted became immaterial, and the failure of the jury to answer, if the court had authorized them to so do, could not affect the judgment. Phœbus v. Connellee (Tex. Civ. App.) 228 S. W. 982; Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090.

Under his propositions Nos. 1, 42, 43, 44, and 45, appellant contends the finding of the jury to special issue No. 1 is in such conflict with the answers to special issues Nos. 3, 4, 5, 6, and 7, as to preclude the rendering of any judgment on said findings, for which reason the court should have set aside the findings of the jury and granted a new trial. There is no assignment in the record upon which to predicate the above propositions. The propositions in the brief and at the close thereof all refer to "second original ground for motion for new trial." Appellant's second ground for new trial is as follows: "Because the court erred in overruling this defendant's and cross petitioners' motion to set aside the verdict of the jury heretofore returned in this court, for the reasons set out in said motion, which is here referred to and made a part hereof."

In said motion referred to, there are set out eight separate and distinct grounds for setting aside the findings of the jury. The assignment on which these propositions are based is too indefinite to require consideration. However, we have examined the answers of the jury claimed to be in conflict, and find said findings are not in conflict.

Some of appellant's assignments relate only to matters and issues between himself and his codefendants in the trial court. These we have not considered, as appellant has questioned no part of the judgment except that of appellee, Lynch, against himself, and said assignments in no way relate to the judgment in favor of appellee.

While we have not discussed all of appellant's assignments relating to the issues between himself and appellee, Lynch, we have considered all of them, and, finding no reversible error, overrule same, and affirm the judgment of the trial court.